## JACOB ALBRIGHT V. W. F. CORLEY.

1. Though an instruction of the court may fail to present properly the law of the case upon a question involved in the suit, yet, if it be plain from the evidence that the jury was not and could not have been misled by it to the injury of appellant, it will afford no ground for reversal.

2. It is competent to prove the number of stock of a particular brand running in a range by the opinion of stock men accustomed to ride in quest of other stock through the same range, if it be the best evidence within reach of the party offering it, though the witnesses may have had no interest in nor charge of the stock inquired about.

3. When a misrepresentation is charged as a ground for avoiding a contract,

it is competent to prove that the party alleged to have been defrauded was ignorant, by reason of his calling, character and associations, of the matter to which the contract related.

4. An affidavit filed in this court, having for its object to discredit a statement of facts made out and signed by the judge who tried the case below, cannot be regarded.

5. See this case for facts held sufficient to avoid a contract on account of misrepresentations made by the party seeking to enforce it.

APPEAL from Houston. Tried below before the Hon. A. T. Watts, as special judge.

*Nunn & Williams,* for appellant.—Our system of pleading requires the allegation of the facts—the substantive, material facts—constituting the cause of action or ground of defense. (Mims v. Mitchell, 1 Texas, 446; Carter & Hunt v. Wallace, 2 Texas, 209; Hall & Jones v. Jackson, 3 Texas, 309; McGehee v. Shafer, 9 Texas, 23; 1 Chitty's Pleading, 340, 342, 343.)

A plea is not good as a matter of defense unless it contains all the legal requisites to constitute the defense. (See cases above cited, and also Hillebrant v. Booth, 7 Texas, 500; Hogan v. Kellum, 13 Texas, 399; Denison v. League, 16 Texas, 408.)

What are the legal conditions and necessary prerequisites to constitute a cause for a rescision of contract?

1. There must be a misrepresentation of a material fact, peculiarly within the knowledge of the party making, and not equally open and accessible to the other party. (Fry on Specific Performance, Secs. 428, 437, and notes, also Sec. 457; 1 Story's Equity, Secs. 195, 197, 200; 2 Parsons on Contracts, pages 769, 771, 773, and notes.)

It must appear that the representations were such that he had a right to rely upon them; and if he knew or suspected them to be false, and did not rely upon them, he cannot complain; or if the expressions were mere matters of opinion, upon which he had no right to rely, the

contract is not avoided, although the intent of the opposite party was fraudulent—which is not pretended in this case. (See 2 Parsons on Contracts, p. 773, and Note *b;* Fry on Specific Performance, Secs. 437, 438, and Note *g*, and also p. 275 and Note *j*.)

2. If the truth or falsehood of the representations might have been tested by ordinary diligence and care, it was the party's own folly to rely upon them, and he cannot complain. (See authorities above cited, and also 1 Story's Jurisprudence, Secs. 197, 199.)

3. Every person reposes at his peril on the opinion of others, when he has equal opportunity to form a correct judgment. (Mitchell v. Zimmerman, 4 Texas, 81 ; 1 Story's Equity, 197, 199 ; 2 Parsons on Contracts, pp. 679, 680.)

4. To entitle a party to rescind a contract for fraud, he must restore the other contracting party to the original condition before contract was made. (2 Parsons on Contracts, 679, 680, and notes.)

5. Also, if a party continues to use the property after he discovers the fraud, it is a waiver of his right to rescind. (2 Parsons on Contracts, 781, 782 ; Green v. Chandler, 25 Texas, 178.)

Although the appellee had a great number of pleas filed, yet we submit that he has wholly failed to meet these essential and fundamental conditions for a rescision of the contract, either by his pleas or his proof. He does not allege that Jacob Albright had peculiar knowledge of the matters referred to, not equally within reach of the appellee.

We submit, that appellee, as soon as he knew, or had reasons to suspect, a material defect or fraud, should have at once and without delay declared his purpose to rescind, and given personal notice to the other contracting party. (See Fry on Specific Performance, Secs. 428, 437, and note, also Sec. 457; 2 Parsons on Contracts, pp. 769,

773, and notes, Secs. 781, 782; Green v. Chandler, 25 Texas, 148.)

Not only this, but he should have restored or tendered the property received. (See 2 Parsons on Contracts, 679, 680.)

And thereafter he should not have used or made any claim whatever to the property, or any portion of the same. (See 2 Parsons on Contracts, 781, 782; Green v. Chandler, 25 Texas, 148.)

Parol evidence will not be received to vary, contradict, or alter written contracts. (See 1 Greenleaf, Secs. 275, 276, 277, 278, 281, 282, 283; Epperson v. Young, 8 Texas, 135; 1 Parsons on Contracts, p. 429.)

This paper signed by Jacob Albright states the subject of the sale to Corley, but does not say anything about the number of cattle; and Corley says he would have claimed five hundred head had he found them in the range; nevertheless, it states the consideration to be all the stock then owned by Jacob Albright within certain prescribed limits, and by certain particular brands. Can a stipulation be introduced into said writing in reference to the number of cattle thus sold without varying, altering, or contradicting the writing? If so, then we ask, what number could thus be interpolated into the writing without having such an effect? Would one number answer as well as another, or must it be just such a number as will suit the exigencies of the appellee's case, and he be allowed to state the number?

The only reply that we feel called on to make is, that Jacob Albright is only bound by his contract as he made it; and as this contract is reduced to writing and signed by him, the terms of the writing alone must be looked to to ascertain the extent of his liability, except to explain some latent ambiguity, which in this case does not exist. (1 Greenleaf, Secs. 297, 300; Roberts v. Short, 1 Texas, 383; Epperson v. Young, 8 Texas, 135.)

*Hancock, West & North,* for appellee, after reviewing the pleading and discussing the evidence, conclude:

We think that after a review of the pleadings and evidence, this court will come to the conclusion that the appellant has no ground to complain of the verdict of the jury.

As to the maxim of *caveat emptor,* relied on by the appellant, that question was passed upon by the jury; the evidence as to whether Albright's representations were fraudulent or not, or whether they amounted to warranties or not, was somewhat conflicting—they weighed that evidence and returned their verdict. The issue of rescision and the issue of reconvention were both before them, and properly. Proof upon both issues was before them. If the plea asking a rescision is to be held bad, there was abundant evidence under the plea of reconvention to support the verdict rendered.

Another point relied on by the appellant is, that parol evidence will not be admitted to vary written contracts. The exceptions to the rule are perhaps better established than the rule itself. And that fraud, which violates and avoids everything, is one of these exceptions is equally well established by the authorities cited by the appellant himself and by the following authorities: Hubby v. Stokes, 22 Texas, 217; Henderson v. San Antonio and Mexican Gulf R. R. Co., 17 Texas, 560; Mitchell v. Zimmerman, 4 Texas, 75; Rhode v. Alley, 27 Texas, 443.

The issue of fraud was properly before the jury, and the evidence admissible. But it may be questioned whether the evidence complained of did vary the terms of the contract; and the appellant's first bill of exceptions is so vague that it fails to elucidate the point sought to be raised. It does not recite the evidence in particular, but it assumes as a fact that certain "parol evidence" was introduced. This bill is not sufficiently specific, and

we are unable to tell what evidence was and what was not objected to on that ground.

The third bill is also insufficient, and not well taken. The evidence there complained of was the evidence of experts, and as such was admissible for what it was worth.

DEVINE, ASSOCIATE JUSTICE.—Jacob Albright brought suit in the District Court on the eleventh of March, 1867, against the appellee, on a note for five hundred dollars, executed on the twenty-fourth of August, 1865, and payable to Albright or bearer "on the first day of January next." On the twenty-second of March, 1867, defendant answered and averred, that the note sued on was given for three hundred head of cattle; that he was induced to make the trade and give the note by reason of the false and fraudulent statements and declarations of the plaintiff as to the number and kind of cattle; that in truth there were no beef steers in the stock, and that the number did not exceed two hundred head of cattle; that the statements and representations of plaintiff as to number and kind of stock were made with intention to defraud and deceive defendant, and did deceive, and have operated as a fraud on the rights of defendant. He further states that the consideration of the note had partially failed, to the amount of three hundred dollars, and prays for such deduction on the note as the court may deem proper, and for general relief, etc.

On the nineteenth of March, 1868, nearly one year after defendant filed his answer, the present party in interest, William Albright, by leave of the court, intervened, and averred that he was then the owner of the note sued on, he having purchased the same for a valuable consideration; that he had purchased the claim sued on since the commencement of this suit; he prayed that he be substituted for the original plaintiff, and allowed to prosecute this suit in his own name; "and he avers that said Jacob

Albright has applied for the benefit of the bankrupt act, and cannot proceed further as plaintiff, and that he has no further interest in this suit.'' To this intervention defendant excepted, charging fraud and collusion between plaintiff and intervenor; that plaintiff could not transfer the note after he had made application to become a bankrupt; that intervenor's petition showed that he had obtained the note after its maturity, etc. Defendant filed an amended answer, averring that in June, 1862, Jacob Albright falsely represented that he owned a tract of land in Tyler county, known as the Cavanaugh headright, of one league and labor; that, induced by his representations, defendant purchased one-fourth of said tract; that he paid Albright one thousand dollars in a trade for the land, but afterwards, finding that Albright had no title, the contract was rescinded; and upon Albright's representations that there were three hundred head of cattle, including fifty four-year-old beeves, he agreed to pay fifteen hundred dollars for the stock; that there were no beeves, and not more than one hundred head of cattle; that he had sustained three thousand dollars damages, and prayed for general relief, etc.

To these exceptions and amended answer of defendant there were various exceptions and amended pleadings of plaintiff, styled replications, followed again by exceptions and amended answers of defendant; these again were met by exceptions and other amended pleadings of plaintiff. The facts stated above, it is believed, however, embrace all the material facts contained in the voluminous pleadings of the plaintiff, intervenor and defendant. There was a mistrial before the presiding judge, on the twenty-seventh of November, 1871, and a trial, verdict and judgment for defendant, on the twenty-sixth day of November, 1872, before A. T. Watts, Esq., special judge. A motion for new trial was overruled, and an appeal taken by intervenor or plaintiff to this court.

Of the thirteen instructions to the jury asked by plaintiff's counsel and refused by the court, it is sufficient to say that some of them had been already given in the general charge of the judge to the jury; others, with reference to a supposed state of facts in the case, were not warranted by the evidence; and those charges asked with reference to general principles of law had no application to the cause as it then stood before the jury.

The 1st, 2d, 3d, 4th and 5th grounds of motion for new trial are embraced in bill of exceptions, and will be noticed hereafter. The 6th ground, that the court erred in its charge to the jury, is supported by an examination of the charge in that portion of it which states, "And if you find a deficiency in the number and value of the cattle to exist, and such deficiency was material, then you will find for the defendant."

This portion of the charge is open to objections; it failed to present properly the law of the case on the question before the jury; but in view of the evidence in the case it did not and could not operate to the injury of the plaintiff.

The 7th ground for the motion, that "the court erred in rejecting plaintiff's special charges asked," is shown to be unsupported by the record.

The 8th and 9th grounds, that the verdict is contrary to law and the evidence, will be better ascertained by an examination of the evidence.

The 10th and 11th grounds are not necessary to notice.

The first bill of exceptions, that "the court erred in permitting defendant to introduce parol evidence to explain, contradict or vary the written contract," is not supported by any part of the record. The court so states in the certificate to the bill of exceptions, and there is nothing in the statement of facts to contradict this statement of the presiding judge.

The second exception recites, "that plaintiff, by his at-

torney, objected to the evidence of James A. Corley, touching the capacity, character, and professional associations of defendant, as being irrelevant and foreign to the issue." That evidence was introduced to show that defendant was ignorant, by reason of his calling, of stock matters. The evidence on this subject furnishes no ground for a reversal, and affected no legal right of the plaintiff.

The third exception to the evidence of witnesses, "as to the number of stock in the range, when they or either of them had never been specially charged with said stock, nor had any other means of making an estimate than was afforded them by passing through the range in quest of other stock," presents no ground for reversal. It was the best evidence in reach of defendant; the witnesses had peculiar and abundant opportunities to form an opinion, and their estimates went to the jury for what they might be worth, being open to contradiction or rebutting testimony, if in the power of plaintiff to produce it.

The fourth exception is to the effect that "plaintiff objected to the testimony of Wm. F. Corley, the defendant, as to statements made by Jacob Albright touching the number of stock embraced in said trade, first, because such statements were made prior to the written contract, and were therefore merged into and covered by the written contract." This, and the remainder of this exception, is more in the nature of a legal argument, and is fully answered by the answers of defendant, the charge of the court, the verdict, and the statement of facts in the record.

The fifth exception, "That plaintiff offered the decision of J. G. Callison v. Grey, 25 Texas, 84, to show a decree of a court of competent jurisdiction in favor of plaintiff for the land purchased by defendant of Jacob Albright," etc., was properly excluded by the court, as the question of ownership, validity of title, or any interest in

8

that or any other land, was not in issue, neither was it in any way connected with the suit, both parties having, seven years before, rescinded the land contract.

The thirteen assignments of error are either specially or in substance set out in the motion for a new trial on the numerous bills of exceptions already noted, and need no further examination. After an attentive consideration of the pleadings, motions, exceptions, special instructions, and assignments of error, but one question remains to be answered, namely, is the judgment supported by the law and the evidence? To answer this question satisfactorily, a brief statement of the principal facts in the case will be necessary.

The original plaintiff, Jacob Albright, in 1862, gave his bond to defendant, to convey one-fourth of a league and labor of land in Tyler county, receiving in payment *one thousand dollars*, in cash, notes, and cotton, and a note for another thousand dollars, payable after he should be able to convey. In 1865 this trade was by mutual consent canceled, and Albright sold to defendant a stock of cattle running on the range in Houston county, for $1500, he, Albright, retaining the thousand dollars previously paid him in the land trade, and taking defendant's note for $500 (the note sued on in this cause). As already stated, defendant plead a partial failure of consideration, and afterwards by his amended pleadings claimed a larger loss by the fraudulent representations of plaintiff. About one year after the answer of the defendant was filed, the original plaintiff transferred to the present plaintiff, or intervenor, the note in suit, and went into voluntary bankruptcy. This proceeding occurring at the time it did, has the appearance of an effort to shield himself from any liability to refund any portion of the thousand dollars, and throw on the defendant the task of contending against the payment of the note in suit, with a person who, in the opinion of the plaintiff, could not

be affected by the defense set up in defendant's answer to the suit then pending.

The evidence contained in the statement of facts establishes clearly and conclusively that Jacob Albright received from the defendant, Corley, $1000 and the $500 note in suit, as the consideration for a stock of cattle running in the range, and represented by him to number from three to five hundred head, among which were from thirty to fifty four-year-old beeves ; that the defendant was a practicing physician, who had never been in the range where the cattle ranged, save once when he visited a patient in the night ; that it was these representations of plaintiff which induced defendant to make the trade ; that defendant employed a competent man to look after and collect the stock—one of the best men for that purpose in the country, and, as one of the witnesses stated, the best man for that purpose he ever saw—who could only find six or seven head of beeves.

All the witnesses who testified respecting the stock, with the exception of plaintiff's son, stated that in all their ranging, driving, or penning stock in that range, they saw but few of the brands sold defendant by plaintiff ; that, in hunting the stock owned by them or kept for others, it was their custom to examine all brands, and the highest number of the stock purchased by defendant to be found was about one hundred head, of which about five or seven were beeves that were running with some wild cattle. One witness stated that he had hunted all over the range for the space of thirty miles ; that he lived in the range, and had seen but very few of the stock referred to. Another, living in the neighborhood, had hunted all over that country from thirty to fifty miles ; had seen some few of the brands sold Corley; estimated the number at one hundred head. Another, who had hunted with the person employed by defendant all over the range, saw, he thought, about one

hundred head, with from five to seven beeves running wild.

It was shown that Albright, when he made the trade with defendant, estimated the stock at five dollars a head. From this evidence, it is seen that defendant has suffered loss to the extent of one thousand dollars, which, with the interest from the payment in 1862 down to the time of rendering judgment in his favor, would amount to at least eighteen hundred dollars; while the doubtful right remained to him to collect, if he could, about one hundred head of cattle scattered over an extent of country from thirty to fifty miles. It requires but little calculation to know that the result of an effort to collect would scarcely compensate for the expenditure, and yet the plaintiff, in view of the repeated efforts of defendant to have the contract canceled or set aside, seeks to draw from him the amount of the note in suit with its accrued interest. The facts in the case amply sustained the plea in reconvention of the defendant and a cancellation of the contract. The bankruptcy and death of the plaintiff, however, would have made a judgment on that plea of no benefit to defendant, and it only remained for him to defeat this suit on the five hundred dollar note. This the verdict of the jury has done; any other verdict in this case would be a violation of the plainest principles of evidence and justice.

The charge of the court is perhaps liable to objection on the question of what is termed "a material deficiency;" it stated the questions at issue, however, in a clear and able manner, and quite as favorably to plaintiff as he had any right to expect. The error referred to did not mislead the jury, and was no ground for a new trial.

The affidavit of Thomas J. Calhoun, attached to the brief of appellant's counsel, in which an effort is made to discredit the statement of facts made out and signed by the special judge who tried the case, is entitled to but

slight consideration; considering what it sets forth, it amounts to litle. So far as it is intended to discredit the testimony of defendant Corley, the statements are not inconsistent with his evidence on the trial. The letter, so far as it is intended to contradict the statement of facts, is simply an attempt, by an *ex parte* affidavit of a volunteer witness, to discredit the official statement of one alone authorized to certify to "a statement of facts." As such we cannot consider it of any weight.

There being no error in the judgment of the court, it is affirmed.

AFFIRMED.

Justice Moore did not sit in this case.