Sarah Minna Scott Hyman et al. v. John A. Grant.

Decided March 28, 1908.

**1.—Trespass to Try Title—Landlord and Tenant—Limitation.**

In 1884 S. purchased a large cattle ranch within the boundaries of which was a section of land belonging to G.; in 1888 S. leased said section from G. for a term of one year, the contract of lease being in writing; said lease was not renewed, and no other lease was ever executed between the parties, and the rental for no other year was ever paid; there was no evidence that the owner or landlord was ever actually notified of any repudiation of the tenancy; in 1899 S. received from one C. a deed to the same section of land, which was duly recorded; C. had no right or title to the land, and the purpose of his deed to S. was to set in motion the statute of limitation; from the date of said deed S. and his heirs openly claimed and used the land as their own, and held adverse possession thereof until 1907, when a vendee of G. filed suit of trespass to try title for the land. Held, because G. was recognized by S. as the owner of the land by lease contract and acts of tenancy, and there had never been any repudiation of tenancy brought home to the knowledge of S. or any surrender of the land, the statute of limitation could not avail the defendants, and the plaintiff was entitled to recover.

**2.—Application for Continuance—Sufficiency.**

Where, in trespass to try title, the defendants plead the statutes of limitation, and on the day before the trial the plaintiff filed a plea in avoidance of the same, an application for continuance by defendants to obtain testimony to refute said plea considered, and held insufficient. Chief Justice Conner dissenting.

**3.—Attorney and Client—Confidential Communications—Evidence.**

In trespass to try title, the testimony of an attorney as to the character of his client's possession of the land in controversy considered, and held not subject to the objection that the information of the attorney was obtained through confidential communication from his client. Chief Justice Conner dissenting.

Appeal from the District Court of Mitchell County. Tried below before Hon. James L. Shepperd.

*McLean & Carlock* and *Miller & Dycus,* for appellants.—Where the plaintiff amends by supplemental petition, sets up new matter which tends to surprise the defendant and which he is not prepared to meet, the court should upon application of defendant grant a continuance. Gulf, C. & S. F. Ry. Co. v. Butler, 34 S. W., 758; Greely v. Carter, 30 S. W., 487.

The certificate of the Commissioner of the General Land Office, that the land in controversy was one of the surveys embraced in the 400 sections granted to the Railway Company for the first 25 miles of its road, was a conclusion and was not admissible in evidence. Robertson v. Du Bose, 76 Texas, 12; Tinsley v. Rusk County, 42 Texas, 46; Hamilton v. McAuley, 27 Texas Civ. App., 256; Smithwick v. Andrews, 24 Texas, 495.

An attorney-at-law can not divulge anything learned by him in the course of confidential communications between his client and himself, as such a communication was privileged. Harris v. Daugherty, 74 Texas, 6; McIntosh v. Moore, 22 Texas Civ. App., 22.

*C. H. Earnest,* for appellee.—There was no surprise to the defendants in the matters set up in plaintiff's first supplemental petition, inasmuch as proof of tenancy could or might have been made by plaintiff under his original petition under his formal allegations of trespass to try title. Berry v. Jagoe, 45 Texas Civ. App., 6.

There was no error in the court's overruling defendants' application for continuance based upon the want of the testimony of Mrs. Sarah Scott Hyman, who had been the wife of W. T. Scott, because the facts which they expected to prove by this witness as shown in their application, were facts with reference to an offer on the part of W. T. Scott to lease said land, which offer it was alleged was never accepted by plaintiff, John A. Grant, and not with reference to an actual consummated lease contract, developed on the trial, and no such document as an offer to lease was either pleaded by the plaintiff or introduced in evidence. Berry v. Jagoe, 45 Texas, Civ. App., 6; Price v. Lauve, 49 Texas, 81; Herman, v. Gunter, 83 Texas, 69; Railway v. Hall, 83 Texas, 679.

Facts testified to by an attorney at law not communicated to him by his client, or not communicated with the view of or as a basis for professional advice, are not privileged communications. Henderson v. Terry, 62 Texas, 284.

CONNER, CHIEF JUSTICE.—This suit was instituted by appellee in the District Court of Mitchell County in the ordinary form of trespass to try title on January 14, 1907; the defendants, who are appellants here, were Mrs. Sarah Minna Scott Hyman and her husband, Harry Hyman, John P. Scott, W. T. Scott, Jr., Robert C. Scott, John P. Scott, Jr., and Annie Rose Scott, defendants being the former wife of W. T. Scott, deceased, and his minor children with the addition of Harry Hyman, the present husband of Mrs. Hyman, and John P. Scott, the guardian of the minor children above named. The defendants, Mr. and Mrs. Hyman, on May 24, 1907, answered by pleading not guilty and the statutes of limitations of three, five and ten years. John P. Scott, guardian, answered on June 5, 1907, by interposing the same pleas as the other defendants. On June 26, 1907, appellee filed supplemental petition averring: "That if the defendants, Harry Hyman, Sarah Minna Scott Hyman and J. P. Scott, guardian, or either or any of said defendants, or any vendor or vendors of said defendants were ever in possession of the land described in plaintiff's petition, such possession of said defendants or of their vendor or vendors was as the tenant of the said plaintiff, or of plaintiff's vendor, and of this plaintiff puts himself upon the country."

The trial, which was on June 27, 1907, resulted in appellee's favor, and the appellants have appealed from the judgment against them and have assigned errors to the action of the court in over-

ruling their application for continuance, in permitting the introduction of certain documentary and other evidence over appellants' objections, in giving and refusing charges to the jury, and in overruling appellants' motion for a new trial.

The undisputed evidence shows that appellee claims the section of land in controversy to be one of four hundred patented to the Southern Pacific Railway Company on the 26th day of July, 1862, as a bonus for the completion of the first twenty-five miles of its railroad, and by said railway company conveyed to W. T. Scott, M. J. Hall and Alexander Pope, trustees, and by said trustees to John T. Grant & Company, through and under which appellee claims as a vendee. It seems also undisputed in the evidence that W. T. Scott, the father of the minor appellants and the former husband of Mrs. Hyman, some time about the year 1884 purchased a cattle ranch within the boundaries of which the section in controversy was situated; that W. T. Scott thereafter continued to use the land as a pasture until the year 1888, when he entered into formal written contract for the lease of the section of land in controversy with L. P. Grant, appellee's vendor, for the term of one year, from October 15, 1888, to October 15, 1889, for grazing purposes and for a rental of fifty dollars. This lease was dated in December, 1888, signed by both Scott and L. P. Grant and is unimpeached in the record. No renewal of this lease or new lease was ever made, so far as the record discloses, nor does it appear that W. T. Scott or any of the appellants ever paid rent after the expiration of the lease above referred to. W. T. Scott, however, retained possession, and on March 27, 1889, received a deed executed by M. Carter purporting to convey the absolute title to the land, which deed Scott caused to be registered in due form in Sterling County in May, 1899. There is a conflict in the evidence as to whether any part of the land is situated in Sterling County, but none as to the fact that after the record of the Carter deed, W. T. Scott retained possession and regularly paid all taxes due in Sterling County, where the land was assessed, until the time of his death, which was in April, 1901, since which time appellants have held possession and paid all taxes due. The evidence also tends strongly to show that after the execution of the deed by M. Carter in 1899 W. T. Scott in his lifetime, and appellants since then, have openly claimed and used the land as their own and have held adverse possession thereof, unless estopped from so claiming by reason of the execution of the lease by W. T. Scott in 1888, as before stated. In this connection, however, it should be stated that the record fails to show that L. P. Grant or appellee was ever actually notified by W. T. Scott of a repudiation of said tenancy.

The majority are of opinion that all assignments of error should be overruled, especially as they seem to be answered by appellee's general counter proposition to the effect that the undisputed proof shows that "plaintiff was recognized by defendants and defendants' ancestor as the owner of the land by lease contract and acts of tenancy and there has never been any repudiation of tenancy brought home to the knowledge of the landlord or any surrender of the

land." The writer, however, is unwilling to agree with the majority in at least two respects, viz.: To the court's action in overruling the motion for continuance, and in admitting the testimony of M. Carter complained of in the first and seventh assignments. of error respectively.

Generally speaking, facts in avoidance of the plea of limitation must be specially pleaded to authorize their introduction in evidence. Lewis v. Terrell, 7 Texas Civ. App., 314; June & Co. v. Brubaker, 5 Texas Civ. App., 79; Angell on Limitation, page 315, paragraph 292 6th ed. To this general rule an exception perhaps exists where, as here, the fact is not in the nature of one in confession and avoidance alone, but one which goes to disprove the adverse possession alleged, and which therefore would be admissible under the general denial. See Berry v. Jagoe, 45 Texas Civ. App., 6. But whether within the general rule or not, appellee did undertake to answer appellants' plea of limitation by specially pleading that appellants' possession, if any, was as tenants of appellee or of his vendor. This answer to appellants' pleas of limitation was set up for the first time a day or two only before the trial and appellants filed a first motion for continuance, in all respects in compliance with the statute, averring, among other things not deemed necessary to notice, that Mrs. Minna Hyman, who was in the Dominion of Canada by the advice of her physician, W. W. Marshall, residing at Dulzura, California, and C. A. O'Keefe, of Tarrant County, Texas, were each and all material witnesses for appellants; that they expected to prove by Mrs. Hyman that she was the wife of W. T. Scott in his lifetime; that said W. T. Scott "never held or possessed said land under said plaintiff after her marriage to W. T. Scott in 1891, and that if any lease contract ever existed between the parties the same had been severed and annulled and repudiated by said Scott; . . . that no diligence was used to procure her testimony because it was not known that her testimony would be material till after she left home for Canada;" that "Mrs. Hyman, defendants have every reason to believe, will return to her home at Fort Worth, Texas, as she now intends, in ample time to have her deposition taken by the next term of this court," etc. The averments of the motion relating to Marshall were in substance that he had once run the line between Mitchell and Sterling Counties and that his expected testimony (which was set out) would tend to show that the land in controversy was partly in the latter county, and that hence the deed under which the appellants claimed the five year limitation was properly recorded; "that defendants first learned the name and address of said Marshall in a letter from Marshall this morning and that reasonable diligence would not have enabled them to discover the name and address of said party sooner." The allegations of the motion relating to O'Keefe were: "That defendants are unable to state just what facts they can prove by said O'Keefe because of the lateness of the issue made as to said lease, but they expect to prove by him among other things that he and W. T. Scott were much associated during the lifetime of the latter and during the time from 1889 up to the death of the latter; they both

lived at or near Colorado, Texas, and were related through their wives, and that said witness will testify, as they expect, that said Scott claimed said land adversely to plaintiff and not under him, and to facts and circumstances tending to show a repudiation by said Scott of plaintiff's claim to the land. Defendants can not more particularly set forth what more they expect to prove by the witness at this time."

The witness Carter was permitted to testify "that he was the attorney for W. R. Scott, for a number of years prior to his death, and attended to his business in connection with his land matters, that he was well acquainted with the land in controversy, and had had frequent talks with Scott about said survey; that Scott had built a fine house with other improvements on the land costing about $3,000. He was anxious to buy said land, and witness wrote a number of letters for him and at his instance prior to the year 1899, in an effort to secure the purchase or the lease of the land. Scott was very anxious about the valuable improvements that he had placed on said land and desired to protect the improvements and for that purpose witness made him the deed, bearing date March 7, 1899, conveying the land, and witness forwarded the same to Sterling County for record, enclosing a dollar to pay the recording fees, which Scott afterward paid back to the witness. Although this deed recites the consideration of $1,000 nothing was ever paid to witness, not a single dollar. The purpose of the deed was to protect Scott's interest on the land in the event somebody else bought the land or leased it. Witness had no claim or right to the land and had no unrecorded deed to it. Up to that time Scott did not claim to own the land. Scott had the land leased and witness knew that he had it leased from conversations with Scott, and from the fact that Scott was in possession of the land." To which appellants objected "because the record showed that he was the attorney for W. T. Scott, and the conversations had with him were in a confidential capacity and that the statement of the witness that Scott had the land leased was derived from confidential conversations, and that the statement was also a conclusion of the witness."

The evidence undoubtedly tends strongly to show that W. T. Scott from the time of the Carter deed in 1899 to the time of his death in 1901 claimed the land in controversy adversely to all others, and that Mrs. Hyman and the minor appellants, through their guardian, have done so since that time, paying all taxes due thereon in Sterling County. But, as stated in the beginning of this opinion, appellee insists that the undisputed lease of 1888, together with the further undisputed facts that possession has never been surrendered by either W. T. Scott or any of appellants, conclusively precludes any recovery by them under their plea of limitation.

It is true as a general rule that a tenant can not dispute his landlord's title without a surrender of possession, but there are well known exceptions. For instance, a lessee without surrender of possession may resist the suit of his lessor by interposing an acquired superior title. (McKie v. Anderson, 78 Texas, 207; Dodge v. Phelan,

2 Texas Civ. App., 1441.) So, where the tenant has acquired his landlord's title by purchase from him or at a judicial sale. And it has been held that if the action is brought by a vendee of the landlord (as is this case) the tenant may dispute the derivative title. (Reay v. Cotter, 29 Cal., 169.) And in Tewksbury v. Magraff, 33 Cal., 245, the Supreme Court of California cites with approval the case of Cornish v. Searell, 8 B. & C., 471 (not available here) to the effect that where the tenant did not take possession under the lease, but was in possession at the time he took his lease (as is also the case here), he may dispute the landlord's title without first surrendering the possession: "For, not having received the possession from him, he is under no moral or legal obligation to restore it before adopting a hostile attitude, and he may have attorned by mistake to one who had no title." In the case of Zeller's lessee v. Eckert (4 How. 295, 11 L. ed., 982), the Supreme Court of the United States, in speaking of one Eckert, whose original possession was in subordination to the right of the true owner, but whose subsequent adverse claim was made the basis of the appellees' assertion of title by limitation to the land, said: "There are authorities maintaining the doctrine, that a party standing in the relation of Eckert to the title in question is incapable in law of imparting, by any act of his own, an adverse character to his possession; and that, in order to deny or dispute the title, he must first surrender the possession, and place the owner in the condition he stood before the possession was taken under him. This doctrine was supposed to govern the rights of trustee and cestui que trust, landlord and tenant, vendor and vendee, tenants in common, etc., and that no lapse of time would lay a foundation for a statute bar to the right of entry by reason of an adverse possession between parties standing in this relation, or any others in like privity. The law, however, has been settled otherwise. The trustee may disavow and disclaim his trust; the tenant, the title of his landlord after the expiration of his lease; the vendee, the title of his vendor after breach of the contract; and the tenant in common, the title of his co-tenant; and drive the respective owners and claimants to their action within the period of the statute of limitations." Page 982, citing numerous cases.

In the case before us it is not pretended that W. T. Scott's original entry was in subordination, as tenant or otherwise, to either appellee or to any one of his vendors, direct or remote. On the contrary, it is undisputed that it was by virtue of a purchase of ranch rights from one whose connection with the title does not appear, and it seems to me that the mere fact that in December, 1888, W. T. Scott entered into a contract of lease of one year's duration only, ought not, in the light of other circumstances, be given conclusive effect, neither as against those appellants claiming through his right alone nor as against those whose right is not clearly so dependent. If one obtaining and holding property in a fiduciary capacity can so repudiate the relation without surrendering possession, as all authorities agree, it is difficult to see why appellants should not be permitted to show, as Mrs. Hyman's expected

testimony would doubtless tend to show, that the relation created
or apparently created by the lease of 1888 had long been repudiated
under circumstances sufficient to constitute notice.     There was al-
ready open claim, under an adverse deed duly recorded, as appel-
lants assert, with payment of taxes in the name of W. T. Scott and
of appellants as owners for a period of about eighteen years, which
undoubtedly tends to show not only a repudiation of the title under
which appellee claims, but also to show notice thereof to all persons,
including the alleged landlord and those claiming in his right.     In-
deed, the evidence of those facts was such as that the court submitted
to the jury the questions of whether the lease of 1888 had been
repudiated and whether notice thereof had been brought home to
Grant, the maker.     It seems most probable, therefore, that the testi-
mony of Mrs. Hyman, the surviving wife, and of C. A. O'Keefe was
material to appellants to strengthen the case already made on the
issue so submitted.     The court therefore should have granted the
motion for continuance or at least have sustained the motion for a
new trial on this ground.     In submitting the issue, too, the court
made appellants' right to recover depend also on the question of
whether any part of the land in controversy was situated in Ster-
ling County, and it is possible, if not probable, that under the evi-
dence the jury may have found that there was both a repudiation
of the lease of 1888 and notice of the repudiation as submitted, but
that the land was wholly situated in Mitchell County.     The court
gave a peremptory instruction to find against appellants on the three
and ten years statute of limitation, and therefore the testimony
of W. W. Marshall on the issue of county boundary is material.
It has been suggested that the motion fails to show diligence, but
it does not appear to me to be clearly so.     There is nothing in
the record to suggest that appellants had notice that appellee in-
tended to rely upon the old lease of 1888 or of any other until about
the time he filed his supplemental petition just before the trial,
when it was plainly impossible to secure the desired testimony.     I
conclude that the court erred in overruling the motion for new trial
on this ground, as assigned.                                        · ·

As to Carter's testimony, it seems apparent to me that as a
whole it was highly prejudicial and that the knowledge of the wit-
ness was based largely at least on privileged communications of his
client, W. T. Scott.     If it be assumed that the deed from Carter
was in fraud of the rights of the true owner, it has been held in
this State that such fact, even when the owner is without knowl-
edge of the fraud, will not defeat the operation of the statute of
limitations, if the possession under the fraudulent deed be in fact
adverse.     See Hudson v. Wheeler, 34 Texas, 356.     And it is to be
observed that Carter's testimony tended to limit the character of
W. T. Scott's possession to a specified purpose short of that com-
plete, unreserved, hostile, and adverse claim of title and of posses-
sion against all the world that is indicated by appellants' evidence.
Carter's testimony necessarily tended to destroy the evidence of
complete adverse possession relied upon and, if privileged, should
have been excluded.     McIntosh v. Moore, 22 Texas Civ. App., 22,

and authorities cited. Without discussion of other assignments, I conclude that the judgment should be reversed and the cause remanded.

In accordance with the conclusion of the majority, however, it is ordered that all assignments be overruled and the judgment affirmed.

*Affirmed.*