### HINES et al. v. HOWELL. (No. 3210.)

Court of Civil Appeals of Texas. Amarillo. March 27, 1929.

Rehearing Denied April 17, 1929.

Kay & Akin, of Wichita Falls, for appellants.

Carrigan, Britain, Morgan & King, of Wichita Falls, for appellee.

HALL, C. J. Appellee, Howell, a real estate broker, filed this suit against Hines and Cal Scott for $900 commission alleged to be due him for the sale of a certain oil lease owned by the defendants. The suit is based upon an express contract alleged to have been made to pay him a commission of 10 per cent. on the price realized from the sale of the lease.

One of the principal issues in the case was the authority of Scott to represent Hines in the employment of appellee as a broker. The amount of the commission to be paid was also contested. It is not disputed that the appellee procured a purchaser for the lease, but the deal was not closed because the property had been sold to another purchaser by defendants.

The jury found, in response to special issues, that Hines authorized Scott to employ Howell; that plaintiff had no information at that time that persons other than Hines and Scott were interested in the property; that Scott promised to pay the plaintiff a commission of 10 per cent.; and that Hines authorized Scott to employ Howell as a broker without referring the matter to Hines for his approval. The trial resulted in a judgment in favor of the appellee against both Hines and Scott in the sum of $632.50, with interest.

The first proposition submitted, as one ground in appellant's motion for a new trial, is as follows: "The Court should have granted a new trial for this: because there was some evidence introduced having a tendency to show that Scott had fled from the country, to use the language of counsel for plaintiff in his argument, and that he had

purposely absented himself from the court and from the trial; and there was further evidence that Hines had procured him to leave, which evidence, while weak and uncertain, was highly prejudicial and dangerous in that it tended to discredit this appellant in his case and no doubt influenced the jury in returning the verdict which was returned when in truth and in fact Scott had gone several hundred miles into the Panhandle in response to a message that his father-in-law had been injured by a horse and was in a precarious condition and that in truth and in fact, as this Court knows, said Scott went there because of said disaster and while counsel for plaintiff was picking his bones in an argument to the jury, the said Scott's father-in-law died from such injuries and while this defendant had not been able to communicate with Scott because of his absence, he alleged that Scott was so flustrated and disturbed by the message that he neglected to report to his attorney that he was leaving. That the truth is that this defendant had nothing whatever to do with his leaving and desired him to be present as a witness at the trial and that this matter was of such a highly prejudicial nature that it caused the jury to disregard this defendant's testimony, as well as the testimony of Cal Scott, taken by deposition."

The motion for new trial was verified by Hines.

As bearing upon this proposition, it appears from the record: That the case had been set for trial on Monday morning. That Scott's counsel, Handy, could not find him when the case was called for trial, and it was postponed, and the next case on docket was taken up and tried. On Tuesday afternoon, Scott was notified that the case would come up for trial the next morning. About 2 o'clock that night, he received a telegram from his wife, who was with her father at or near Lubbock, to come at once and bring the boys, that her father was in a precarious condition as the result of injuries received while driving a runaway team. According to Scott's testimony, taken during the hearing on the motion for a new trial, he tried to communicate with his attorney, Handy, that night, and, failing to reach him by phone, he telephoned Hines that he had to leave on the 3 o'clock train, explaining that his father-in-law was in a dying condition. It further appears that he did leave, in response to his wife's telegram, and carried his children, and was not present the next morning when the case went to trial. While the appellee was upon the witness stand, in response to a question from his attorney, he testified: "Mr Scott is not here; that is, I understand he is not."

During the trial, on direct examination, appellant Hines testified: "Cal Scott is in Amarillo. His wife's father was in a runaway and was in a grave condition and his wife wired him to come. He called me out

of bed at 3 o'clock this morning and told me that."

. On cross-examination, in response to a question from appellee's counsel, he stated: "I saw Mr. Scott Monday morning in Judge Kay's office. I did not tell Cal Scott before this case came up to get away from here and stay away. I never told him to do that. As to whether I sat here Monday morning when the case was called for trial and heard Mr. Handy, counsel for Scott, say he could not find him and never opened my mouth, well, I didn't hardly have a chance to open my mouth up here. I did not say that Cal Scott's father got hurt, I said his father-in-law was in a runaway and got hurt. He called me at 3 o'clock this morning and told me his wife had wired for him to come."

On redirect examination, he testified: "Mr. Scott was not here in the court room at the time that the case was called for trial on Monday. I did not have a thing in the world to do with Cal Scott's leaving here. Plaintiff's counsel, Mr. King, took his deposition a long time ago. * * * No, of course, it did not make any difference to me if Cal Scott was here for the trial. I would have rather had him here. I had no reason for not wanting him here. I think that Cal's lawyer will say that I made every effort to get him here Monday morning."

J. E. Handy, attorney for Cal Scott, testified during the trial, as follows: "I represented Cal Scott in this case. I was representing him when the case was called for trial on Monday and I could not find him. I found him on Tuesday some time in the morning. Could not find him on Monday. Our case was the first on call, but we were not ready to go to trial without my client and a second case was called for trial and tried before ours. Ours was postponed to give me time to hunt for Mr. Scott, I suppose that was the reason. At least, I will say we were not forced into the trial. When I found Mr. Scott, I would not be sure who he stated, but some one, advised him not to get in touch with me in order that I might conscientiously say that I could not find him and possibly get a postponement of the case, but I can not say who he said told him to do that. I would not be positive that he said that Mr. Ralph Hines told him to do that. It is my impression that he said that. I do not know where Mr. Scott is now, except from what Mr. Hines stated. Mr. Scott did not call me and tell me he was leaving for Amarillo or anywhere else. I am not appearing for him."

. C. K. Walsh testified that he heard a conversation between Scott and Howell, in which Scott stated that his father-in-law had had an accident, and he was waiting for a wire from his wife to know whether he would leave or not; that such conversation was about noon of the day before the trial.

Mr. King, attorney for appellee, testified, with reference to taking Scott's depositions

in his office, in part as follows: "I will say this: that you cannot let the jury see a man when you merely introduce the depositions. They cannot see his demeanor and you have not got him where the jury can look him in the eye. I don't know that I asked him all the questions that occurred to me at that time and I know there are questions that have occurred to me since that I did not ask him and then there were some that I could have asked that I did not, because I had no court there to make him answer if he did not want to, nor to exclude parts that would be hearsay."

When the motion for new trial was presented, C. E. Birk, one of the jurors, testified in part as follows: "I recall that during the testimony it was presented so that I got the impression that Mr. Scott had left on account of the trial coming up. It was discussed in the jury room when the jury were making up their verdict, the matter of his having gone to the Panhandle. Several jurors mentioned that and the opinion of every one that expressed said that it looked like Scott had run off intentionally and that was the impression they had and the fact that he had gone made it look worse for him as a defendant—well, yes, I guess it did make it look worse for Hines—they were both defendants in the case. As to what effect Scott's absence had on me in making up a verdict: I believe that I thought that ten per cent. was too much, but practically all of the rest of them thought that 'was right and I let them outtalk me. Of course, this occurred to me at the time—it looked bad to me that Scott was not here—If Scott had been here—Of course, I don't know what his testimony would have been, but it looked bad, the fact that he was gone. If he had been here to testify, it appears to me that the judgment would have been five per cent. instead of ten per cent."

On cross-examination by Mr. King, he testified: "I recall that Mr. Handy testified that Mr. Scott told him that it was his best recollection that Hines was the man who told Scott for him not to get in touch with Handy on Monday, stay out of touch with Handy so they could get the case postponed and Mr. Handy further testified that he could not get in touch with Scott on Monday morning and the case was postponed. The fact that Mr. Scott was absent was the thing most prominent in my mind and the fact that he did not get in touch with his lawyer on Monday and the case was postponed then; I am sure all of that was taken into consideration."

Upon the hearing of the motion for a new trial, Scott testified, in part, as follows: "The day this case was tried and the next day also, I was in Lubbock. My father-in-law died and I went to his funeral. He died after I got there. I left here early in the morning before the case came up that day, because my wife called me about 2 o'clock and told me that her father was dying and for us to come. * * * We went up there that night by request of the family. I attended the funeral. Mr. Handy asked me why I had not got in touch with him on Monday morning and I told him I had asked him on Saturday—I had heard that Howell would be here on Saturday and that the trial was coming up and I called Handy on Saturday to see if he knew anything about it and he said he did not. That was about 10:00 or 11:00 o'clock. Mr. Hines came and told me that they were going to try the case and I called Mr. Handy on Monday morning about 11:00 or 12:00 o'clock and did not get him and as I had an engagement in Wilbarger County and got back about 3:00 or 4:00 o'clock and saw him then and he asked me why I did not get in touch with him and I told him that I tried to and understood that the case had been put off. I tell this Court that I did not tell J. E. Handy that the reason I did not get in touch with him was because I was told to stay out of touch with him and that the case would be put off. I did not tell him that Ralph Hines told me that."

The fact of Scott's absence from the courtroom and from town on the day of the trial was discussed by appellee's counsel in his argument to the jury, in the light of the facts which tended at that time to show that Hines was in some measure responsible for the absence of Scott. Ordinarily the failure of a party to produce available witnesses or evidence is a matter which may be properly commented upon by opposing counsel in argument to the jury.

"Where a party eloigns witnesses by removing them beyond the reach of process or dissuades them from attendance or attempts to do so * * * an inference arises that the evidence thus kept out of the case would be highly prejudicial to him." 22 C. J. 110, § 51. Langley v. Devlin, 95 Wash. 171, 163 P. 395, 4 A. L. R. 32.

Unexplained, the sudden departure and absence of one who was a party defendant in the case, as well as the one who is alleged to have made the contract with appellee, was a suspicious circumstance, and appellee's counsel had the right to comment upon it and to draw every reasonable inference from it. And, according to the testimony of the juror Birk, appellee's counsel fully and effectively improved the opportunity. It was the prerogative of appellee's counsel to emphasize the fact of Scott's absence and to refuse to believe Hines' statement in explanation of it. It is not necessary to refer to the evidence of Birk in order to understand the effect on a jury of comments by a skillful advocate upon such a state of facts unexplained. No different verdict could have been expected. Scott's relation to the case was such that appellee's counsel was justified in inquiring as to his absence and in calling the matter to the

attention of the jury in the examination of witnesses. It is true that there were no bills of exception taken to the proof of the fact or to the comments made by Mr. King upon it in his argument, for there were no grounds for objection or exception, so far as appellant then knew. Even if Scott told his attorney, Handy, why he did not get in touch with him on Monday, it was a confidential communication between a client and his counsel, was absolutely privileged, and should not have been admitted in evidence (McIntosh v. Moore, 22 Tex. Civ. App. 22, 53 S. W. 611), and should not bind Hines, because it was made in his absence, and was certainly prejudicial (Hyman v. Grant, 50 Tex. Civ. App. 37, 114 S. W. 853).

■ The privilege of objecting to the disclosure of a confidential communication, however, is one personal to a client or his heirs and legal representatives. Scott was not there to object, and his attorney, Handy, did not do so. We doubt whether Hines could legally have objected for himself or for Scott or predicated a bill of exception upon the admission of the testimony. Smith v. Boatman Savings Bank, 1 Tex. Civ. App. 115, 20 S. W. 1119; Hall v. Nunn Elec. Co. (Tex. Civ. App.) 214 S. W. 452; Canty v. Halpin, 294 Mo. 96, 242 S. W. 94.

■ It has been held that the calling of opposing counsel as a witness is ground for a new trial. 46 C. J. 104; Pelletier v. Fifth Avenue Coach Co., 102 Misc. Rep. 548, 169 N. Y. S. 128. We strongly incline to the opinion that, Handy's testimony having been improperly elicited and being highly prejudicial, the comment by appellee's counsel based thereon was ground for a new trial. But, in any event, in the light of uncontradicted evidence showing that Scott's father-in-law died, that he had been unexpectedly summoned by his wife in the night to come to her in her hour of distress, was a sufficient explanation of his absence. and when. on the hearing of the motion for a new trial, this was made plain to the court, and it appeared that the inferences which had influenced the jury were probably without foundation in fact, however honestly and properly appellee's counsel had pressed them during the argument, we think the application for a new trial should have been granted.

"In determining whether or not a new trial will be granted on the ground that counsel for the successful party has introduced before the jury incompetent or immaterial evidence, tending to prejudice the other party, the important consideration is the quality and effect of the evidence and not the manner in which it has been introduced. If, in the examination of witnesses, irrelevant evidence of collateral matters is brought before the jury for the purpose of, or tending to prejudice the jury against the opposite party, a new trial will be granted, as where incompetent questions which assume the existence of damaging facts are put with such persistency as to make it evident that the questions and not the answers are considered important. * * * Unsupported or improper statements made by counsel for the prevailing party in the presence of the jury, which are prejudicial to the opposing party, will afford cause for a new trial." 20 R. C. L. 235, § 20.

While Mr. King's comments upon Scott's absence were warranted and proper in the light of the facts as they had been disclosed by all the witnesses (except Handy) at that time, we think the facts developed upon the hearing of the motion for a new trial tended to exonerate Hines and at least entitle him to a new trial.

As said in Parker et al. v. Miller et al. (Tex. Com. App.) 268 S. W. 727: "The jury were the exclusive judges of the facts proved, the credibility of the witnesses, and the weight to be given their testimony. The plaintiffs in error have not had a fair trial before the jury on an issue of fact. The jury, with the issue fairly presented, must decide the question of the preponderance of the evidence before either the trial court on motion for new trial or an appellate court is authorized to pass upon this question, and the issue here has not been fairly presented. We can not agree with the Court of Civil Appeals that the Trial Court was authorized to deny a new trial on the ground that the preponderance of the evidence supported the verdict and judgment."

While the facts in the Parker Case disclose improper conduct on the part of the attorney for the successful party, no such facts appear in this case, but the principle announced and just quoted should control, since it appears from the record that the preponderance of the evidence in the instant case supports the verdict and the judgment.

For the reasons stated, the judgment is reversed, and the cause remanded.

## On Motion for Rehearing.

Appellee's motion for rehearing states that evidence as to Scott's absence from the trial was introduced first by appellants' counsel.

Reference to the statement of facts shows that appellee is mistaken in this. The first witness introduced was appellee, and in his examination in chief he stated: "Mr. Scott is not here; that is, I understand he is not." Then he was cross-examined by counsel for appellant, who inquired further with reference to that statement. In the course of the examination, the absence of Scott from the trial at a time when every consideration apparently demanded his presence was greatly emphasized. Appellants' counsel, realizing that fact, and for the purpose of neutralizing its damaging effect, discussed it in his argument to the jury. In reply to the argument, appellee's counsel discussed it as stated in the original opinion. There was nothing improper in these proceedings, and the error

1064

lies solely in the refusal of the trial judge to grant the application for a new trial when Scott's absence had been satisfactorily explained. That appellant has been prejudiced by the proceedings is clear from the record. ■ The motion for rehearing is accompanied by affidavits of the trial judge and appellants' counsel, in which it is stated that the record in this case discloses that appellants' counsel introduced testimony explaining the absence from the trial of Cal T. Scott. This is true, but it was after appellee, in response to a question from his own counsel, had stated that Scott was not present. We cannot, however, consider these affidavits for any purpose. Affidavits affecting matters occurring during the trial, and which do not appear in the transcript or statement of facts, cannot be considered by appellate courts unless they go to the question of the jurisdiction of said court. Holliday v. Sampson, 42 Tex. Civ. App. 364, 95 S. W. 643; Hall v. Reese's Heirs, 24 Tex. Civ. App. 221, 58 S. W. 974; Maverick v. Routh, 7 Tex. Civ. App. 669, 23 S. W. 596, 26 S. W. 1008; Albright v. Corley, 40 Tex. 105.

The motion is overruled.