H. L. HALL v. UNKNOWN HEIRS OF JOSEPH REESE.

Decided March 30, 1900.

**1. Verdict—Findings on Special Issues—Second Trial.**

Where a verdict was rendered on special issues submitted, and on which no judgment was entered because the findings did not dispose of all the material issues of the case, such findings are not conclusive on another trial of the cause, although they are not set aside.

**2. Land Certificate—Recommendation by Traveling Board.**

A land certificate for a league of land granted under the Act of December 18, 1837, to one who had been permanently disabled in the service of Texas, was not required to be examined and recommended by the traveling board, nor to be established by suit under the Act of February 4, 1841.

**3. Same—Sale in Partition.**

Where, in an action of partition and under proceedings regular in form, a land certificate for an unlocated balance was sold by a special commissioner under the decree of partition, and the price was paid by the purchaser, such proceedings operated as a partition of the certificate, binding upon the parties and vesting title in such purchaser.

**4. Same—Decree of Partition Not Specifying Certificate.**

Although the original decree in a partition suit did not in express terms mention a land certificate, it will be held to have effected a partition of such certificate where the certificate was mentioned in the petition for partition, and the report of sale, the decree of sale, the order of confirmation, and the conveyance made, show that the certificate was embraced in the property partitioned.

**5. Judgment in Partition Binding—Parties.**

In an action to remove cloud from title brought against heirs who were parties to a prior suit for the partition of the property, such heirs and those claiming under them can not set up that the decree of partition is not binding on them because of a failure to make the wife of the decedent whose property was partitioned a party to such partition suit.

**6. Practice on Appeal.**

A party can not complain on appeal of an error by the trial court in a matter of practice which was invited by himself.

**7. Same—Affidavit Not Part of the Record Below.**

The appellate court will not consider matters set up in an affidavit which is not a part of the record of the case as tried in the court below, and which matters should have been passed on in the first instance by the trial court.

APPEAL from Grayson. Tried below before Hon. DON A. BLISS.

*E. C. McLean* and *Wolfe, Hare & Semple*, for appellant.

*W. D. Gordon* and *A. L. Beaty*, for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—The appellant filed his original petition in this cause on the 5th day of February, 1897, to remove cloud from title to land in Grayson County, Texas, patented to Joseph Reese, his heirs and assigns. Service was obtained by publication, and defendants answered by attorney. Trial and judgment at the January term, 1899.

The appellant went to trial on his third amended original petition, alleging title and ownership in fee simple and possession of the land and that the patent, being to Joseph Reese, his heirs and assigns, was a cloud on his title. He also pleaded title by virtue of the three, five, and ten years statute of limitation, and possession under deeds duly recorded, paying all taxes thereon since January, 1883. He plead title from the State, setting the same out in detail.

At the September term, 1898, the court submitted the cause to a jury on special issues, some of which they failed to answer, and the appellant moved for a judgment in his favor on the issues that were answered. His motion was overruled.

At the January term, 1899, the appellees filed their fifth amended original answer, consisting of exceptions, general denial, coverture, and minority of some of the defendants, to avoid the plea of limitation pleaded by plaintiff (appellant). They also pleaded the four and ten years statute of limitation as to title of appellant acquired from Henry Taylor and Pollie Carlton, and the equitable rule of stale demand.

The defendants also set up in their fifth amended original answer the finding of the jury in the special issues submitted to them at September term, 1898, alleging that the jury answered all the material issues in their favor, referred to the answers of that jury, and asked that they be made a part of their answer. The plaintiff (appellant) excepted to this portion of the answer, which exception was overruled.

The case at the January term, 1899, was, at the request of the defend-

ants, submitted to the jury on special issues not answered by the previous jury, and the court, over the objection of the appellant, refused to submit the issues that the jury had answered, and treated all issues answered by the previous jury as facts proved, and would not permit any proof whatsoever on any of the issues that the previous jury had answered.

The jury, at the January term, 1899, answered all questions propounded to them, and on their answers, together with answers of previous jury; and the undisputed facts as charged by the court, the court entered judgment in favor of appellant, on his plea of ten years statute of limitation, for an undivided three-eighths interest in 207 acres of land described in plaintiff's petition, describing the 207 acres by metes and bounds, together with all costs of suit not already otherwise adjudged. Appellant filed motion for new trial, which was overruled, to which appellant excepted, gave notice of appeal in open court, and has duly perfected his appeal. The facts appear in the opinion.

The appellant contends that the court erred in the effect given to the answers of a jury at a former term of court in response to special issues submitted to them, which findings the court had held were not sufficient to authorize a judgment thereon, and in holding said findings conclusive upon another trial at a subsequent term, and in refusing to admit evidence on said issues, although such findings had not been set aside by a formal order of the court.

The cause was tried at the September term, 1898, and submitted to the jury on special issues. The jury answered these issues by their verdict filed November 12, 1898. The plaintiffs made a motion that judgment be entered on the verdict. This motion the court overruled. The defendants also moved for judgment, which was not acted upon until the succeeding term, which began in January, 1899, and was then overruled. At the January term the cause was again tried and the court treated the findings of the jury at the former term as facts established, and sought to supplement the same with the findings on such additional issues as, in the opinion of the court, were necessary to authorize a judgment. He refused to admit evidence on the issues which the former jury passed upon.

The court in its charge repeated to the jury the findings of the jury on the first trial and told them that the facts so found were established facts, and followed with fifty-six groups of facts as having been so found, and also stated five additional groups of facts which they were told were undisputed and which they should find, and then follows with five special issues to which they were to return answers. The jury returned their verdict finding the undisputed facts as directed by the court, and also answered the five special issues submitted.

On these several findings the plaintiff moved for judgment in his favor for the land sued for, which was denied. Defendant's motion for judgment was granted, except as to a three-eighth interest in 207 acres of land to which it was decreed that plaintiff had title by the ten year statute of limitations.

We have not been cited to any case which, in our opinion, supports

such a practice as was adopted in this case. The bill of exception shows that the trial court based its ruling on the case of Hume v. Schintz, 90 Texas, 72. In that case the petition presented two causes of action: (1) For malicious prosecution; (2) false imprisonment. The jury found for plaintiff on the first cause of action, and for the defendant on the second cause of action. Schintz v. Morris, 13 Texas Civ. App., 580. Upon motion of defendant the verdict in favor of plaintiff was set aside. The verdict in favor of defendant was not disturbed. The trial court declined to render judgment for defendant on the verdict in his favor on the cause of action for malicious prosecution. An application for mandamus was presented by defendant to the Supreme Court to compel the trial court to enter a judgment on the verdict in his favor, giving as a reason that he desired to plead the same in bar to any subsequent suit for the same cause of action. The Supreme Court refused the application on the ground that the verdict was an adjudication and could be plead in bar to another suit between the parties for the same cause of action. In that case the verdict of the jury disposed of all the issues involved in the cause of action seeking a recovery for malicious prosecution.

When the verdict disposes of all the issues involved in a cause of action, it is an adjudication, and, if not set aside, is conclusive of the matters therein involved. But such is not the case here. The findings of the jury on the special issues filed in November, 1898, did not, in the opinion of the trial court, dispose of the issues involved in the cause of action. The court refused to enter judgment upon these findings. If a jury fails to find on all the material issues submitted to them, and the court can, upon another trial at a subsequent term, treat the facts found by them as established facts, and submit to another jury such additional issues as in his opinion should be found, there would be no limit to his power in this respect. If, upon the second trial, the jury should fail to find on all the issues in the case, the court, at the next term, could submit the case to a third jury on such issues as the jury on the second trial had failed to answer. Thus a case might be submitted to several juries before all the material issues necessary to support a judgment were determined, and then, if either party desired the verdict reviewed upon appeal, a statement of facts must necessarily be prepared and filed at each term a jury passes on any particular issue in the case. The statute makes provision for but one verdict in any case, which may be either general or special. Rev. Stats., art. 1328. Such verdict should comprehend all the issues submitted. Art. 1333. If the verdict returned by the jury in November, 1898, disposed of all the material issues in the case, judgment should have been entered thereon. If the verdict failed in this respect, then the court should, of its own motion, have set the verdict aside and treated the result as a mistrial.

The action of the court in the matters above set forth is made the ground of appellant's first assignment of error in which he complains of the overruling of his special exceptions to that part of defendant's fourth amended original answer setting up said findings of the jury at

a former term of the court; and in the tenth and eleventh assignments of error complaining of the action of the court in refusing to admit testimony offered by him on said issues, and in charging the jury that the answers of the former jury to said issues were established facts. We think these assignments are well taken.

Appellant's second assignment of error complains of the action of the trial court in refusing to enter judgment for plaintiff upon his motion therefor, because he says the uncontroverted evidence and the verdict of the jury upon the special issues submitted to them shows that plaintiff had a good and sufficient title to the land in controversy emanating from the sovereignty of the soil.

The appellees, in reply to this assignment, submit a counter proposition to the effect that the original certificate No. 743 having never been recommended by the traveling board of land commissioners, nor established by suit, was absolutely void and evidenced no right whatever, and was mere waste paper, and therefore the partition sale in 1857 conveyed no right to any land to the purchaser.

The appellant contends that this was not such a certificate as was required to be examined by the traveling land board. On December 18, 1837, the Congress of the Republic of Texas passed an act entitled, "An act making provision for persons who have been permanently disabled in the service of Texas." By the terms of this act it is provided: "That Thomas William Ward, James C. Neill, James Belden, John Thoms, Washington Somers, and all others who have been permanently disabled by loss of eye, arm, or limb, or such other bodily injury as by certificate of the board of land commissioners shows his incapacity for bodily labor by wounds received in the service of Texas, be, and they are hereby declared to be, entitled to one league of land each as testimony of the gratitude of this Republic."

By virtue of this statute a certificate was issued to Joseph Reese on the 25th day of January, 1839, for one league of land, "on account of service done by him and wounds received by him in the battle of Velasco." Certificates issued by virtue of this law were not headright certificates. 1 Laws of Texas, p. 62. Pasch. Dig., arts. 4129-4140. Mr. Paschal designates the same under the head of *"Headrights—Special."* Pasch. Dig., art. 4155.

On January 29, 1840, Congress passed an act entitled, "An act to detect fraudulent land certificates and to provide for issuing patents to legal claimants." By section 1 of said act it was made the duty of said board "to inspect the record of the boards of land commissioners and ascertain by satisfactory testimony what certificates for land have been issued by said boards to legal claimants, and report as soon thereafter as practicable to the Commissioner of the General Land Office such certificates as they find to be genuine and legal." The oath prescribed by section 2 of this act required each commissioner to swear that "I will honestly and faithfully discharge my duties, and will not report or recommend to the Commissioner of the General Land Office any certifi-

cate that I do not believe to be a genuine and legal claim against the government, and issued in conformity with the provisions of the Constitution and of the laws granting donations of land to immigrants." Laws of Texas, vol. 2., p. 313.

Thus it will be seen that by the body of the act the commissioners were to ascertain what certificates had been issued by the respective boards of legal claimants. By the oath they are not to recommend any certificate that they do not believe to be a genuine and legal claim, and issued in conformity with the provisions of the Constitution and of the laws granting donations of land to immigrants. It would thus appear that the board was confined by the act creating it to the examination and recommendation of certificates granted to immigrants.

On the 4th day of February, 1841, Congress passed a law supplementary to the Act of January 29, 1840, which created the traveling land board. By this supplementary act the owners and holders of any headright certificates which had not been recommended were authorized to file suit in the district courts to establish the genuineness of such certificates. Laws of Texas, vol. 2, p. 635; Pasch. Dig., art. 4226. This supplementary act embraced only certificates issued to immigrants.

By article 11, section 2, of the Constitution of Texas of 1845, it was provided that the district courts were to remain open until the first day of July, 1847, for the establishment of certificates for headrights not recommended by the commissioners appointed to detect fraudulent land certificates. The provisions of said article clearly show that the relief granted was confined to certificates issued to immigrants and to what were known as headright certificates. Thus, not only by the terms of the act creating a traveling land board to detect fraudulent land certificates, but by subsequent legislation in reference thereto, it clearly appears that said board was only to pass upon certificates issued to immigrants.

In the case of Peacock v. Hammond, 6 Texas, 552, Judge Lipscomb, speaking of the inducements for the passage of this law, says: "It was from these (certificates) of the first class the mischief mainly, if not entirely, arose, that called forth from the Legislature the act to detect fraudulent land certificates; and it is doubted whether, in the whole history of that stupendous scheme of fraud, a single case of a second class certificate was ever brought within the dark and corrupt sphere of its operation." He then holds that third class certificates were not included within the terms of that statute.

We think the reasons for holding that the certificate issued to Joseph Reese was not included within the terms of that statute are stronger than those that said law did not embrace third class certificates. There was but little opportunity to commit fraud upon this class of certificates. The number of persons entitled to the benefits of the law was limited. The Republic evidently kept a list of its soldiers; it presumably knew the number and names of those disabled by wounds received while engaged in its service which permanently disabled them from bodily labor. It could not know the number or names of the numerous persons imi-

grating to its territory and who became entitled to the benefits of its liberal colonization laws.

We conclude that the certificate involved in this suit was not included within the law to detect fraudulent land certificates, and it was not necessary to its validity that it should be recommended by the traveling land board.

The same reasoning by which it is attempted to show that the statute creating the traveling land board was intended to include certificates of the kind involved in this suit, if sound, would also show that said certificates were included within the terms of the supplementary act of February 4, 1841, authorizing the validity of certificates to be established by suit in the district court, and in the absence of a finding that the certificate had not been established by suit, we would, in this proceeding, presume it had been so established.

On August 28, 1856, a partition suit was filed in the District Court of Brazoria County, Texas, styled Charles K. Reese et al. v. Henrietta I. Selby et al., seeking to have certain property, described in the petition as belonging to the estate of Joseph Reese and Margaret Reese, partitioned among their heirs. It was alleged that the plaintiffs and defendants in that suit were the sole heirs at law of the said Joseph and Margaret Reese. The petition described a number of tracts of land and some personal property, and among other property it described the original certificate No. 743 issued to Joseph Reese. A decree was rendered by said court partitioning said property among the parties named as the heirs of Joseph Reese and Margaret Reese.

On April 15, 1857, the commissioners appointed by said decree to make the partition made a report to the court that they could not make an equitable partition of said property. Thereupon said District Court decreed that the property, including the said original certificate No. 743, be sold to make the partition, and appointed one McMasters special commissioner to make the sale. At the fall term of said court said McMasters made a report of the sale of said property, stating that he had sold the property on the first Tuesday in June, 1857, to C. K. Reese, including the said original certificate No. 743, and that the certificate sold for $180, on twelve months' credit. This report was duly confirmed, and McMasters ordered to make the conveyance to said Reese upon compliance by him of the terms of the sale. Ann Reese, the second wife of Joseph Reese was not a party to this suit, but the record shows that she has since died. No question is here made as to the binding and conclusive effect of said partition suit by reason of her not having been made a party thereto. C. K. Reese, the purchaser of the certificate, was an heir of Joseph and Margaret Reese, and entitled to one-fourth of their property. It appears from the record that the suit of C. K. Reese et al. v. Henrietta I. Selby et al. was a friendly suit and prosecuted for the purpose of having a partition of the property of the estate of Joseph and Margaret Reese.

Some of the appellees in this suit were parties to that partition suit, and others are heirs of parties to that suit. The price which C. K. Reese

agreed to pay McMasters for the certificate has been fully paid. Defendants have not tendered back said consideration or any part thereof. The proceedings for partition of the estate of Joseph and Margaret Reese in Brazoria County, by virtue of which certificate No. 743 was sold, were binding upon the parties to that suit and their heirs. De La Vega v. League, 64 Texas, 217; Stark v. Carroll, 66 Texas, 398.

The sale by McMasters and the payment of the purchase money placed the title of said certificate in C. K. Reese. Said Reese entered into a contract with R. J. Townes, by the terms of which Townes agreed to procure a duplicate certificate, in lieu of certificate No. 743, and for his services Reese agreed to give Townes one-fourth of said duplicate. C. K. Reese died in 1858, leaving a will by which he bequeathed to his executors, A. P. McCormick and E. Stephens, all of his property, to be held by them in trust for the benefit of his children, and to be conveyed by said executors to his children, share and share alike, as they became of age. His executors were not required to give bond. The will made said executors guardians of his children, and clothed them with full power to manage his estate independent of the probate court. McCormick alone qualified.

McCormick recognized the agreement made between C. K. Reese and R. J. Townes during the lifetime of Reese, by which Townes was to procure a duplicate certificate of certificate No. 743, and for his services was to receive one-fourth of such certificate. Townes procured a duplicate in lieu of certificate No. 743, said duplicate being numbered 167, and this certificate Townes placed in the hands of H. E. Taylor, of Fannin County, Texas, for location. In 1860 part of said duplicate certificate was located on the land in controversy in Grayson County, Texas, and patent issued May 17, 1872, to Joseph Reese, his heirs and assigns. McCormick inventoried three-fourths of the certificate as belonging to the estate of C. K. Reese.

R. J. Townes died in 1865, leaving a will by which he appointed Charles S. West independent executor. A. P. McCormick, independent executor of Charles Reese, and Charles S. West, independent executor of the will of R. J. Townes, made a verbal agreement by which it was agreed that West, as the executor of the will of R. J. Townes, was to have the survey in controversy and another tract of 160 acres of land in Grayson County, Texas, located by the same certificate, and that said McCormick, as executor of the will of Chas. K. Reese, should have the unlocated balance of the certificate. C. S. West, as executor of Townes, in 1875 executed a deed to H. E. Taylor, conveying an undivided 160 acres of land, part of the land in controversy, and also a 160-acre tract in Grayson County, Texas, located by virtue of same certificate No. 167. Thereafter H. E. Taylor claimed the land described under said deed. Taylor has since conveyed said land to the appellant. In 1897, Pollie T. Carlton, one of the heirs of R. J. Townes, deceased, joined by her husband, Fred Carlton, executed to appellant a deed conveying to him an undivided one-fifth interest in the land in controversy. The action of Townes, and, after his death, of his executor, in locating 1008 acres of

the certificate in Grayson County seems to have been done for the purpose of securing to himself the benefits of his one-fourth of the certificate. Such location and the subsequent partition between West, independent executor of Townes, and McCormick, independent executor of C. K. Reese, whereby Townes received for his interest in said certificate the location in Grayson County, and McCormick as executor received the unlocated balance of the certificate, and the subsequent action of McCormick in inventorying such unlocated balance as the property of the Reese estate, and the sale thereof and receipt of the consideration for said estate, operated as a partition of said certificate binding upon both estates, and placed the title of that part of the certificate located in Grayson County, and the location made thereunder, in the estate of Townes. Farris v. Gilbert, 50 Texas, 356; Glasscock v. Hughes, 55 Texas, 479; Kirby v. Estell, 78 Texas, 426. The authority conferred upon McCormick by the will of C. K. Reese was sufficient to authorize him to make such partition. Murrell v. Wright, 78 Texas, 519; Wrenn v. Harris, 78 Texas, 349.

The appellant has shown title to the land in controversy from the sovereignty of the soil and appellees have failed to show any title. Edwards v. Humphreys (Texas Civ. App.), 36 S. W. Rep., 333; same case, 89 Texas, 512; Batcheller v. Besancon, 19 Texas Civ. App., 137; Adams v. House, 61 Texas, 639; Baldwin v. Root, 90 Texas, 546; Galbreath v. Howard, 11 Texas Civ. App., 230; Howard v. Stubblefield, 79 Texas, 1; Davidson v. Wallingford (Texas Civ. App.), 30 S. W. Rep., 289; same case, 88 Texas, 619; Culmell v. Borroum, 13 Texas Civ. App., 458; same case, 90 Texas, 95; Staley v. Hankla, 43 S. W. Rep., 20.

The appellees have cross-assigned errors, none of which complain of the verdict of the jury. We have carefully considered said cross-assignments, and they are overruled. The appellant is in possession of the land, and, as to appellees, is entitled to judgment. It follows that the court erred in refusing to enter judgment for appellant upon the verdict and undisputed facts.

The judgment is reversed and here rendered for appellant, removing the cloud and quieting him in his title and possession.

*Reversed and rendered.*

### OPINION ON MOTION FOR REHEARING.

#### June 2, 1900.

The appellees, in their motion for rehearing, complain of the action of this court in holding that the trial court erred in instructing the jury which tried the case in January, 1899, that the findings of the jury of November 12, 1898, were conclusive of the matters therein found and thereafter reversing and rendering a judgment for appellants. Appellees contend that if the findings of the jury in November were not conclusive, then there are no findings by the last jury upon which the judgment could be based, and that it was error for this court to reverse and

render judgment for appellant. The practice adopted by the trial court was invited by the appellees. In their cross-assignment of errors no complaint is made about the verdict, or the manner in which it was reached. The court in its charge to the jury, stated the facts as found by the jury, set out in the verdict of November 12, 1898. This was done at the request of the appellees. These findings were treated as facts proven. We have considered them as facts found by the trial court, and as appellees have not objected to such findings they could not now be heard to complain of the same.

Again, we do not hold that the verdict rendered November 12, 1898, was insufficient to have authorized a judgment for the appellant. The appellant moved for judgment upon the verdict as then rendered. This motion, at the subsequent term of the court, was overruled. Without passing upon the sufficiency of the first verdict, we are of the opinion that under the undisputed facts found by the court and the verdict of the jury, the judgment should have been rendered for the appellant.

In the ninth ground of their motion for rehearing the appellees insist that this court erred in holding that the decree of partition in the case of Charles K. Reese et al. v. Henrietta I. Selby et al., in the District Court of Brazoria County, Texas, was a decree partitioning this certificate, because neither the verdict of the jury nor the judgment of the court embraced the certificate, but only certain lands belonging to the community estate of Joseph and Margaret Reese. We think that this is too narrow a construction to place upon the decree in that case. The original decree did not in express words mention the certificate. The commissioners appointed by the decree to partition the property mentioned therein made a report to the court that they could not make an equitable partition thereof. Thereupon the court entered a decree that the property, including said original certificate No. 743, be sold to make partition, and appointed one McMasters special commissioner to make the sale. McMasters, as such special commissioner, sold the property, including the original certificate No. 743, and made report of the sale to the court, which report stated that he had sold the certificate to C. K. Reese for $180, on twelve months' credit. This report was duly confirmed by the court, and McMasters, as special commissioner, ordered to make the conveyance to said Reese. The petition was offered in evidence, and upon the objection of the defendant was excluded by the court as being irrelevant and immaterial. To this ruling appellant excepted and made the petition a part of his bill of exception and it is a part of the record. This ruling was error. The petition for partition mentioned the certificate as part of the property sought to be partitioned.

Appellees, in their tenth ground of motion for rehearing, contend that this court erred in holding that no question is made in this suit as to the binding effect of the partition suit by reason of Ann Reese, the second wife of Joseph Reese, not having been made a party thereto. Neither Ann Reese nor any party claiming under her is made a party to this suit. As the appellees were parties to that suit, or claim as heirs of

persons who were parties threto, they can not in this proceeding be heard to complain that that decree is not binding by reason of the failure to make Ann Reese a party. Stark v. Carroll, 66 Texas, 393. Attached to the motion for rehearing is an affidavit to the effect that Henrietta Selby was the sole heir and inherited the property of Ann Reese, and that on February 21, 1899, said Henrietta Selby conveyed all her interest conveyed by her from Ann Reese to Camelia Kempff, who is a party to this suit. This affidavit can not be considered by this court. The matter therein set out is not a part of the record of the case as tried in the court below. The affidavit sets up matters which should be passed upon in the first instance by the trial court.

Appellant's eleventh ground for new trial is that this court erred in holding that defendants have not tendered back the consideration paid to C. K. Reese by the special commissioner, or any part thereof. There is no allegation in the pleading of the appellees of any tender on their part of the consideration so paid. There is a finding of the jury that the consideration was fully paid. From the condition of the record we think it fairly appears that the consideration has not been tendered back.

We conclude that there is no merit in the motion for rehearing, and the same is overruled.

*Overruled.*

Writ of error refused.