### VINEYARD et al. v. HEARD et al.† (No. 5239.)

(Court of Civil Appeals of Texas. San Antonio. April 8, 1914. On Motion for Rehearing, May 13, 1914.)

1. EXECUTORS AND ADMINISTRATORS (§ 360*)—SALE BY ADMINISTRATOR—POSTPONEMENT OF SALE.

Under Acts 12th Leg. c. 81, § 250, providing that if the administrator shall fail to sell realty, ordered to be sold, at the time specified in the order, he shall report the facts to the court or judge, who may appoint another day for the sale, and so on from time to time, until the property is sold, an order postponing an administrator's sale was valid though made in vacation.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1481–1483; Dec. Dig. § 360.*]

2. DEEDS (§ 13*)—GRANTEE.

The grantees in a deed must be in existence when it is executed, but a deed to the heirs of a dead person is valid if the grantees

---

can be identified, though a deed to the heirs of a living person, without specifying their names, is invalid, especially where the heirs are yet unborn.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 21, 22; Dec. Dig. § 13.*]

3. DEEDS (§ 105*)—GRANTEES.

Since the grantees under a deed must be in existence at the time it is executed, under a deed to grantor's son and to the heirs of grantor and his wife, the son would take all of the land conveyed if grantor then had no other children.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 278–291, 372–374; Dec. Dig. § 105.*]

4. DEEDS (§ 143*)—RESERVATIONS.

A provision in a deed to grantor's son, reserving to grantor the right to control the land as "guardian of said estate for the benefit" of his son, gave grantor no more rights over the property than he had as the natural guardian of his son, and the fee-simple title passed to the son free from any trust.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 453–455, 465–468; Dec. Dig. § 143.*]

5. JUDGMENT (§ 707*)—PERSONS BOUND.

Minors interested in the land, who were not parties to a partition proceeding, were not bound by the decree.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1230; Dec. Dig. § 707.*]

6. GUARDIAN AND WARD (§ 4*)—RIGHTS OF PARENT—DISPOSITION OF PROPERTY.

A parent cannot appoint himself the guardian of his minor child's estate and dispose of the property without the sanction of a court; his guardianship by nature not giving him such power.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 4, 5;· Dec. Dig. § 4.*]

7. PARTITION (§ 46*)—PARTIES.

All persons interested in the estate must be parties to a partition suit.

[Ed. Note.—For other cases, see Partition, Cent. Dig. § 114; Dec. Dig. § 46.*]

8. GUARDIAN AND WARD (§ 103*)—SALE OF WARD'S LANDS—CONFIRMATION.

Where a father sold land which he had previously conveyed to his son, he cannot validate the sale by six years later applying for guardianship on the son's estate and for confirmation of the sale as an act of guardianship; there being no order of sale made.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 378–381, 391; Dec. Dig. § 103.*]

9. JUDGMENT (§ 472*)—COLLATERAL ATTACK.

A judgment of the Court of Civil Appeals as to which the Supreme Court denied a writ of error cannot be impeached collaterally.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 908; Dec. Dig. § 472.*]

10. EXECUTORS AND ADMINISTRATORS (§ 388*)—CONVEYANCE OF LAND.

A sale of land by an administrator of a wife, who was also executor of the husband, was valid, and conveyed the interest of both the husband and wife, where part of the money received from the sale was used in paying community debts and the children accepted the proceeds of the property.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1573–1582; Dec. Dig. § 388.*]

11. EXECUTORS AND ADMINISTRATORS (§ 376*)—SALE OF LAND—VALIDITY—ESTOPPEL TO DENY.

Heirs who received the full benefit of the proceeds of a sale of property by an administrator are estopped to deny the validity of the sale.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1539–1542; Dec. Dig. § 376.*]

12. HUSBAND AND WIFE (§ 81*) — MARRIED WOMEN—CONTRACT.

A married woman would not be bound by covenants of warranty contained in a deed by her.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 331–335; Dec. Dig. § 81.*]

On Motion for Rehearing.

13. JUDGMENT (§ 710*)—PERSONS BOUND.

A subsequent judgment, involving the same land as that affected by a prior judgment in favor of one who was not a party to the action in which the subsequent judgment was rendered, would not affect such person or the prior judgment in her favor.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1230; Dec. Dig. § 710.*]

Appeal from District Court, Aransas County; F. G. Chambliss, Judge.

Action by Lillian Vineyard and others against Fannie W. Heard and others, in which Anna W. Vineyard and another intervened and adopted plaintiffs' pleadings. From a judgment as stated, plaintiffs appeal. Reversed ·in part and rendered for plaintiffs and affirmed in other respects.

Fiset, McClendon & Shelley, of Austin, for appellants. E. A. Stevens, of Rockport, and Wilson, Dabney & King, of Houston, for appellees.

FLY, C. J. This is an action of trespass to try title, instituted by Lillian Vineyard, J. M. Thornton, Mattie B. Iglehart and husband, and K. J. Edwards, against Fannie W. Heard and husband, W. J. J. Heard, and Rob Johnson, the land being a portion of what is known as "Lamar Peninsula." An amendment was filed by which J. M. Brundrett was made a party defendant, and judgment of partition prayed for as against him. Heard and Johnson answered by general and special exceptions, pleaded not guilty, and answered that since the suit was instituted Lillian Vineyard had executed a deed to her mother, Anna W. Vineyard, and her brother S. H. Vineyard, conveying to them all her interest in the land sued for. Anna W. Vineyard and S. H. Vineyard intervened in the suit, adopting as their own the pleadings filed by the plaintiffs. Brundrett answered his general denial and a special plea that the land in question, so far as it included lands set apart to James B. Wells, Sr., in a partition of the Lamar tract, was acquired by him with the community funds of himself and deceased wife, and that her children had an interest therein, and he prayed that they be made parties to the suit. The children intervened, setting up their interest in the land. James B. Wells filed a plea, claiming an interest in the land through purchase by himself and W. J. J. Heard of the interest of Mrs. Hynes, a daughter of Hannah Brundrett, deceased.

Plaintiffs and Anna .W. and S. H. Vineyard filed a supplemental petition in which it was alleged that, if the heirs of Hannah Brundrett ever had any interest in the land it was only an equitable one, and had been lost by laches; that the same had been recovered and held in trust for them by J. M. Brundrett through a judgment rendered in his favor for 13/24 of the land in a cause styled Lillian Vineyard v. J. M. Brundrett, and if said heirs of Mrs. Brundrett have any interest, it should be taken out of the land acquired by J. M. Brundrett in said suit. The cause was tried by the court, without a jury, and judgment was rendered that the plaintiffs and interveners, A. W. and S. H. Vineyard, recover an 11/24 interest in certain lands, as to which parties had filed disclaimers, and that they take nothing as against any of the other parties, but the lands claimed by the parties who did not disclaim were allotted to them as follows: To Mrs. Fannie W. Heard 11/24, to John M. Brundrett 13/24, and to James B. Wells and W. J. J. Heard Mrs. Hynes' interest, being 1/16 of 13/24 of the land allotted to the heirs of Mrs. Brundrett. The judgment was amended so as to specify that J. M. Brundrett should receive one-half of the 13/24 set apart to him in the original judgment, and that each of the heirs of Hannah Brundrett should receive 1/16 of the 13/24 of the land. The cause was held upon the docket for the purpose of making partition of all the lands described in the judgment.

The Lamar Peninsula is a famous tract of land, and has been the cause of much litigious strife. Vineyard v. O'Connor, 90 Tex. 59, 36 S. W. 424; O'Connor v. Vineyard, 91 Tex. 488, 44 S. W. 485; Vineyard v. Brundrett, 17 Tex. Civ. App. 147, 42 S. W. 232. J. W. Byrne, the grandfather of Anna W. Vineyard, is the common source of title, having at one time owned the whole of the peninsula. He conveyed an undivided one-half interest in the land to William G. Hale and Ebenezer Allen, and it was agreed by the parties that at the time of his death J. W. Byrne owned 27/144, Allen & Hale, 27/144, Samuel Colt, or his heirs, 78/144 and E. Williams, 12/144; that all the interest of Allen passed from Mrs. Josephine H. Allen to James B. Wells, deceased, on December 12, 1873; that the interest of E. Williams passed to Marcy and Huntington, the latter being a party to a suit for partition in the district court of Aransas county, Tex., styled Hale et al. v. Vineyard et al.; that the heirs of Hale were parties to that suit, and that the deed from Eliza Colt et al. to Allen, Hale & Vineyard, on August 8, 1870, passed to them all the right, title, and interest which Samuel Colt, formerly of Hartford, Conn., had in and to the property described in the deed. J. W. Byrne died prior to May, 1862, and left a will. That will was probated in October, 1862, in which Ann Willie Byrne and her mother, Ann E. Byrne, were made the resi-

duary legatees and devisees, and Mrs J. P. O'Connor and Mrs. Ann E. Byrne were made executrices. Mrs. Byrne refused to qualify and Mrs. O'Connor was appointed executrix. The following items appeared in the appraisement of the estate: "2/8 Lamar property, undivided share of about 12,000 acres of land, $1,500.00. About 4/8 of ‖Lamar property sold to Colt for $18,000.00, but not paid, and of which 4/8 Capt. Byrne claims 3/8 thereof, $2,250.00."

The Byrne estate was partially administered by Mrs. O'Connor, and in 1867 she was removed, and J. W. Vineyard was appointed and qualified as administrator de bonis non. Afterwards he was regularly authorized to sell "3,375 acres of the Lamar property, undivided, more or less, originally in the name of Isaac E. Robertson, M. Hunt, Wm. Lewis and James W. Byrne, the whole said to be 13,500 acres and held in common with Wm. G. Hale and Ebenezer Allen and including all unsold town lots in the town of Lamar in Refugio county. An interest of 3/8 in a contract of sale with Col. Samuel Colt, amounting to about 2,531¼ acres of land, more or less, and claim against heirs for $6,750.00 resulting therefrom, being for half of the unsold property in the town of Lamar, the said claim held in common with W. G. Hale and Ebenezer Allen, belonging to said estate." The sale was reported as made to S. C. Vineyard and confirmed on May 28, 1872. The estate was closed in 1877.

S. C. Vineyard executed the following deed: "The State of Texas, County of Aransas. Know all men by these presents that I, Samuel C. Vineyard of the state of Texas and county of Aransas, for the sum of $1.00 (and out of affection) for my son, Samuel Harvey Vineyard, do hereby grant, release and convey, to have and to hold forever, all my right, title and interest in the estate of James W. Byrne, purchased by me at administrator's sale in behalf of my son, Samuel Harvey Vineyard and heirs of S. C. Vineyard and Anna W. Vineyard. Hereby reserving the right to control as guardian said estate for the benefit of S. H. Vineyard and heirs of S. C. Vineyard and Anna W. Vineyard. And I, the said Samuel C. Vineyard, for and in consideration of the sum of $1.00 to me in hand paid, do hereby bind myself, by these presents to warrant, defend and protect unto the said Samuel H. Vineyard and heirs of S. C. Vineyard, all the possessions hereunto conveyed this 8th day of October 1873, A. D. In testimony whereof I have hereunto signed my name and affixed my scrawl for seal, on this 8th day of October A. D. 1873. S. C. Vineyard. Witness: Eustace Hatch." The validity of that deed was sustained by the Supreme Court. Vineyard v. O'Connor, 90 Tex. 59, 36 S. W. 424. On November 23, 1888, Harvey S. Vineyard conveyed to his sister, Lillian Vineyard, all the property conveyed to him in the foregoing deed by his father.

In 1893 a contract was made between Mad-

dox Bros. & Anderson and Samuel H. Vineyard, Alex. T. Vineyard and Lillian Vineyard, minors, acting through their parents, S. C. and Anna W. O. Vineyard the duly appointed guardians of their persons and estates by which one-half of certain tracts of land in Aransas and many other counties claimed by said minors were contracted to be conveyed to the parties first named, in consideration that the lands should be recovered from adverse claimants. That contract was approved by the county court.

In 1876 W. G. Hale instituted a suit in the district court of Aransas county against S. C. Vineyard and Anna W. Vineyard for partition of about 12,500 acres of land, the land in controversy included, out of the Lamar Peninsula, and James B. Wells, Sr., having acquired all the Allen interest in the land, he was made a party to the partition suit. Hale died during the pendency of the suit, and his widow and those representing his interests were made parties, as well as Huntington and Marcy, who owned Williams' interest. At that time S. C. and Anna W. Vineyard and their minor child or children owned 39/144 acquired from the Colt heirs and 27/144 conveyed by the administrator of the Byrne estate to S. C. Vineyard and by him conveyed to Samuel Harvey Vineyard, the whole amounting to 11/24. James B. Wells, Sr., owned the Allen interest, 11/48, Marcy 1/24, Huntington 1/24, and the Hale heirs owned 11/48 of the land. The deed made by S. C. Vineyard to Samuel Harvey Vineyard was on record at the time the partition was instituted. Immediately after the partition of the land was made S. C. Vineyard made powers of attorney to his wife, who by virtue thereof and for herself conveyed to John W. Herring over 4,200 acres of the land acquired in the partition. About five years after such conveyance was made to Herring, S. C. Vineyard and wife applied to the county court of San Patricio county, where they resided, for the guardianship of the estates of their three children, in which proceeding they represented that the proceeds of the sale to Herring belonged to the three children, and they afterwards filed an account showing the disposition of such proceeds for the benefit of their children. In 1883 the parents applied for a confirmation of the sale of the land to Herring, the sale having been made to Herring in 1877. There was no order of sale, but six years after the sale was made, and by persons then not guardians, it was confirmed by the court, and they made another deed to Herring.

The deed of S. C. Vineyard to his son, Samuel Harvey Vineyard, of date October 8, 1873, was held by the Supreme Court to be a valid instrument. The court said: "The whole instrument is consistent with the theory that Samuel Harvey Vineyard was intended to be a grantee therein, and no other possible construction can reconcile its peculiar provisions. We, therefore, conclude that the instrument in question was a valid conveyance, and that it passed to him the legal title in the land." Vineyard v. O'Connor, 90 Tex. 59, 36 S. W. 424. In the deed in question S. C. Vineyard sought to convey to his son all the right, title, and interest that he had in the estate of James W. Byrne, but the Supreme Court held in the case of O'Connor v. S. C. & Anna Vineyard, 91 Tex. 488, 44 S. W. 485, that a deed made on August 8, 1870, by the heirs of Samuel Colt to William G. Hale and Ebenezer Allen, each one-fourth of their interest in the Lamar Peninsula, and to Anna W. Vineyard one-half of such interest, conveyed to said Anna W. the title to said land, and that her interest in the land passed by her deed for herself and as attorney in fact for S. C. Vineyard to John C. Herring. That opinion effectually disposes of any claim that appellants could have to that part of the land conveyed to Anna W. Vineyard by the Colt heirs. The court held: "In our judgment, however, it would make no difference in the result if this were true, because the deed executed by Anna W. Vineyard for herself and as attorney in fact for S. C. Vineyard, on June 12, 1877, by which they conveyed the land in question to John C. Herring, had the effect to convey all the right, title, and claim of S. C. Vineyard and of Anna W. Vineyard in the land, whether it was the separate property of either, or was the community property of both. It follows that no title remained in S. C. and Anna W. Vineyard to be conveyed by the deed made by them to the minor plaintiff in 1896. * * *"

[1] The sale by the administrator of the Byrne estate to S. C. Vineyard of the interest of that estate in the Lamar Peninsula was legal and valid. The order postponing the sale, dated August 2, 1871, although made in vacation, was valid and binding. In section 250 of the act of 1870, at page 176, in regard to estates of decedents it is provided: "If, from any cause, the executor or administrator should fail to sell any real property ordered to be sold at the time specified in the order, he shall report the facts to the court or judge, accompanied by his affidavit of the truth thereof, and the court or judge may appoint another day for such sale, and so on, from time to time, until the property is disposed of." The proceedings in the probate court were strictly in compliance with that law.

While it was not necessary to the decision of that case the Supreme Court has indicated in its opinion in Vineyard v. O'Connor, 90 Tex. 59, 36 S. W. 424, that the title to all the interest of the Byrne estate in the Lamar land was conveyed by the deed of S. C. Vineyard to Samuel Harvey Vineyard, as, indicated by the expression that the deed "passed to him the legal title." That language is quite persuasive and accords with the view of this court.

[2-4] It is a well-established rule that a

deed can be made only to grantees in existence or life, at the time of the execution of the deed. A deed made to the heirs of a dead person is valid, if it can be shown who was intended, but a deed to the heirs of a living person without specifying their names is held to be void, and this would be especially true where the heirs of the living were yet unborn. In a Missouri case, where a conveyance was made to a woman and her children, it was held that the deed would be valid as to the woman and the children in esse. Dev. Deeds, § 184; Hamilton v. Pitcher, 53 Mo. 334. And in several Illinois cases it has been held that a deed to a grantee in esse and his unborn brothers and sisters conveys title only to the living grantee, and that while an unborn child may inherit property by descent or take by devise upon coming into being, yet it cannot take a present grant of lands by deed, although in ventre sa mere when the deed was executed. Faloon v. Simshauser, 130 Ill. 649, 22 N. E. 835; Morris v. Caudle, 178 Ill. 9, 52 N. E. 1036, 44 L. R. A. 489, 69 Am. St. Rep. 282; Miller v. McAlister, 197 Ill. 72, 64 N. E. 254. To the same effect is the very unsatisfactory opinion in Bailey v. Willis, 56 Tex. 212. The rule is thus laid down in 3 Washburn, Real Property, p. 239, old page 566: "There must be a person in esse to give as well as receive a conveyance in order to make a deed of an immediate estate by or to such person good. And if there be any reasonable doubt of such person being in esse at the time of the delivery of the deed, it must be affirmatively shown that he was so in order to give deed validity." No other child of S. C. and Anna W. Vineyard was in existence when the deed by S. C. Vineyard was executed except Samuel Harvey, and consequently all land conveyed by the deed went to him. It vested the title in him, and that title could not be divested out of him except by a deed executed by him or his legal representative, or by the judgment of a court having jurisdiction. The provision in the deed to the effect that S. C. Vineyard reserved the right to control the land "as guardian of said estate for the benefit of S. H. Vineyard" gave him no more rights over the property than he had as natural guardian. It created no trust, but the property passed in absolute fee simple to S. H. Vineyard.

In the case of O'Connor v. Vineyard, 43 S. W. 55, the Court of Civil Appeals of the First District, construing the language of this deed, held: "Whatever this right may have amounted to, it was clearly not that of a power to sell. It was 'to control as guardian,' and may have amounted to nothing, since he was the natural guardian, and was entitled to the legal guardianship. A guardian in control of his ward's estate has no power to sell it without authority from court. The deed from S. C. Vineyard to Herring for the land in controversy was without any order of the court, and was executed long before there was any guardianship pending. In the conveyance of the land Vineyard dealt with it as his own. His deed was not operative to convey any interest in the land belonging to Samuel Harvey Vineyard." A writ of error was granted in that case, but the Supreme Court expressly declared that there was no error in the decision, except as to the land conveyed by the Colt heirs to Anna W. Vineyard. The Supreme Court said: "We find no error in the matters complained of in the first five assignments of error embraced in the application of the plaintiff in error, and the said assignments are therefore overruled. The following opinion applies alone to the lands which are claimed through the conveyance from Elizabeth Colt and others, as heirs of Samuel Colt, deceased, to William G. Hale, Sylvina J. Allen, and Anna Willard Vineyard."

[5] The effect of those two decisions was that the minors, not being parties to the partition proceedings instituted by Hale, are not bound thereby; the proposition that they were so bound seeming so utterly untenable to the Supreme Court that it summarily dismissed the matter by saying: "The plaintiff in error relied upon decrees of partition which embrace the land in controversy, made in the years 1876 and 1877, in suits to which Samuel H. Vineyard and the other heirs of Anna W. and S. C. Vineyard were not parties, and we deem it unnecessary to notice them further." If the Supreme Court had deemed that the minors were represented by their parents in the partition suit, it would not have been held that they were not parties to the suit.

[6] It is insisted, however, that although S. C. Vineyard may not have had the authority to sell the land of his minor children, he had the authority as their guardian to represent them in the partition of their land. It is assumed, not only that S. C. Vineyard was the guardian of the estate of Samuel Harvey, his minor son, but that he represented him in the partition, neither of which propositions is sustained by the facts. S. C. Vineyard and his wife were sued by Hale in their individual capacity, answered as individuals, and had the land allotted to them as individuals, and then sold it to Herring as individuals. The names of the minors do not occur in the whole partition proceedings. No authority can be produced to the effect that a parent can appoint himself the guardian of the estate of his minor children and dispose of their property without the aid or sanction of a court. The authorities cited by appellees all are cases in which guardians, executors, or administrators have been legally appointed, and not self-constituted. S. C. Vineyard had no representative capacity, and could have no authority to litigate in a capacity in no wise attached to him. The assumption that S. C. Vineyard was the guardian of the es-

tate of his minor children is without basis and utterly untenable.

[7] S. C. Vineyard did not hold the relation of guardian towards his minor son, except that given by nature, and as such his authority did not extend to the control and management of the property of the child. Railway v. Bradley, 45 Tex. 171. Suing him in his individual capacity had no effect upon the rights of the minor. The recital in his deed as to retaining control of the estate did not add anything to his rights as natural guardian. He had no power or authority to represent Samuel Harvey in the partition suit, and he assumed no such authority, nor did he claim to be representing the minor in the deed made to Herring. That deed conveyed nothing but the interest owned by Mrs. Vineyard as vendee of the interest of the Colt heirs in the land. The case of Hall v. Unknown Heirs of Reese, 24 Tex. Civ. App. 221, 58 S. W. 974, cited by appellees has no bearing whatever upon the facts of this case. No one appointed S. C. Vineyard guardian of the estate of his children, and if he had been so appointed he at no time agreed to a partition of the estate as did the guardian appointed by Reese in his will. It is stated by appellees that W. G. Hale, who instituted the partition suit, "was a lawyer of extraordinary ability," and that he must have known of the existence of the deed of S. C. Vineyard to his son, and it is contended that as he did not make the minors parties, that it was not necessary to make them parties in order to partition their property. The rule is unbroken that all persons interested in the estate must be made parties to a suit for partition. No case has been found that holds that a minor will be bound by a partition suit to which he was not a party, either in person or by his legally appointed representative. We are unwilling to reflect upon the memory of an able lawyer by indulging in the presumption that he actually knew that the property had been conveyed to the minor, and still did not make him a party. It is the part of charity to presume that while he had constructive notice of the conveyance, he had no actual knowledge of it.

[8] The confirmation of the sale to Herring, made in a guardianship obtained after the sale, no attempt being made to obtain an order of sale, was absolutely void, and need not be discussed. O'Connor v. Vineyard, 43 S. W. 55.

[9] In the partition suit instituted by Hale, James B. Wells, Sr., appeared, and alleged that he had bought the Allen interest in the land, and that interest consisting of one-half of eleven twenty-fourths was allotted to him. After the death of Wells his interest in the land was sold by his executor, S. L. J. Beetley, to John M. Brundrett. The sale was regular and valid. The evidence showed that Brundrett purchased the land after the death of his wife and paid for it with money that he borrowed from one Dubose. The land was his separate estate. Afterwards a suit was instituted against him by Samuel C. Vineyard and Anna W. Vineyard as the guardians of Lillian Vineyard, and judgment was rendered against them in the district court, but on appeal to the Court of Civil Appeals at Galveston, the judgment of the lower court was reversed, and judgment was rendered in favor of Lillian Vineyard for 11/24 of all his interest in the Lamar Peninsula. 17 Tex. Civ. App. 147, 42 S. W. 232. A writ of error was refused by the Supreme Court. That judgment is conclusive as to the Brundrett interest. That judgment cannot be impeached collaterally, and whatever may have been the conduct of the attorneys in that case, whether good, bad, or indifferent, can have no effect on the judgment of the court of Civil Appeals.

[10, 11] The land sold to Brundrett by Beetley was inventoried as the property of James B. Wells. There were community debts, one being a debt due F. W. White, which was reduced to a judgment. That debt was evidenced by a promissory note signed by James B. Wells, Jr., John M. Brundrett, and James B. Wells, Sr., by L. A. Wells, who was the wife of James B. Wells, Sr. Mrs. Wells died on September 28, 1878, and administration was begun on her estate on September 19, 1881; Beetley, the executor of the estate of James B. Wells, Sr., being appointed administrator. The deed of the executor to Brundrett was made on December 31, 1881. The two estates were consolidated in March, 1883, and the final account was filed on September 10, 1883. The evidence showed that the children of Wells, Sr., and his wife accepted the proceeds of the property bought by Brundrett, and part of the money received from the sale of the land was used in paying the community debt to White. It was paid after the estates were consolidated. The sale was valid, and conveyed the interest of the Wells estate, that of both husband and wife, to Brundrett. Murchison v. White, 54 Tex. 78. The Wells heirs received their portions of the estate. A number of advancements were made to them. They received full benefit of the money paid by Brundrett, and they are estopped to deny the validity of the sale. Ryan v. Maxey, 43 Tex. 195; Stephenson v. Marsalis, 11 Tex. Civ. App. 162, 33 S. W. 383. The records of the probate court show the existence of debts and the necessity of a sale of the land.

[12] There is no merit in the contention that Mrs. Vineyard and S. H. Vineyard could not obtain title from Lillian Vineyard to the land. If the latter owned the land she could sell it to any one she desired. The title held by Lillian Vineyard had no connection with the partition proceedings, and if Mrs. Vineyard's rights in the land were settled

therein, that would not preclude her from obtaining another and different title to the land. Being a married woman, she was not bound by any covenants of warranty, nor estopped to acquire title to the property. Wadkins v. Watson, 86 Tex. 194, 24 S. W. 385, 22 L. R. A. 779.

The evidence fails to indicate that the Vineyard minors received any benefits from the proceeds of the land sold by their parents.

The judgment is reversed, in so far as it denies a recovery to appellants, and judgment is here rendered in their favor for the land sued for by them. In other respects, the judgment is affirmed.

### On Motion for Rehearing.

[13] We. held in our former opinion and reiterate that Brundrett bought the Wells interest in the land, that Samuel C. and Anna W. Vineyard, as guardians of Lillian Vineyard, recovered the interest that Brundrett had in the Lamar Peninsula, and we did not deem it necessary to state that a subsequent judgment against Brundrett in favor of Mrs. Heard for the same land could not affect the judgment obtained by Lillian Vineyard; she not being a party in the Heard-Brundrett Case. The land bought by Brundrett from the Wells estate was his separate property, paid for out of his separate funds, and neither his heirs nor the Wells heirs own any interest in the interest adjudged to Lillian Vineyard. Mrs. Heard claims title to the land through her judgment against Brundrett, and that judgment is ineffective so far as appellants are concerned.

It is true, as stated in our former opinion, that appellants have no claim to the land sold by the Colt heirs to Anna W. Vineyard and by her sold to Herring, but they are entitled to the land recovered in the judgment against. Brundrett, which was 39/144 of the land, and the 27/144 sold to Samuel Harvey Vineyard by his father, the two interests amounting in the aggregate to 11/24, which was the amount of the land sued for by appellants. This court rendered the judgment it intended to render, and it was not rendered "by an inadvertence" as stated by appellees.

The Wells interest in the land was sold to Brundrett and was recovered from him by Lillian Vineyard, and we cannot inquire into the reason or lack of reason in rendering that judgment. It stands a valid and subsisting judgment of the highest court in Texas, and must be given full force and effect. Appellees are claiming under the Brundrett and Wells title, and that judgment adjudges that interest to be in appellants. As to that interest, as well as the Samuel Harvey Vineyard interest, the court of last resort has spoken, and by the opinions rendered by that court and opinions of the Court of Civil Appeals approved by that court, the land sued for is vested in appellants.

The motion for rehearing is overruled.